RONALD J. BASER & others vs. RICHARD C. SPAULDING
& another.[1]

Essex.    February 9, 1979. — March 22, 1979.

Present: HALE, C.J., GRANT, & DREBEN, JJ.

*Alcoholic Liquors*, License, Objection by church or school.

A board of selectmen was not authorized by G. L. c. 138, § 12, to accept
surrender of a wines and malt beverages license held by a restau-
rant located within five hundred feet of a church and to issue an
all-alcoholic license in its place over the objection of the church,
even though the church had not objected under c. 138, § 16C, to
issuance of the original license. [270-274]

CIVIL ACTION commenced in the Superior Court on
April 26, 1977.

The case was heard by *Bennett*, J.

*F. Dale Vincent* (*David Burns* with him) for the plain-
tiffs.

*Richard C. Spaulding*, pro se.

DREBEN, J. The trial judge ruled that the defendant
Spaulding has a valid license for the sale of all alcoholic
beverages and entered judgment dismissing the plain-
tiffs' complaint brought under G. L. c. 139, § 16A, as ap-
pearing in St. 1973, c. 1114, § 12. The plaintiffs, twelve
voters of the town of Danvers, appeal.

The only question before us is whether the all-alcoholic
license granted to the defendant under G. L. c. 138, § 12,
was lawfully issued; if not, the plaintiffs can invoke the
provisions of G. L. c. 139, § 16A, to abate, as a common
nuisance, the sale of liquor at the defendant's restaurant.

---

[1] Gregory Johnson, the owner of the premises where the defendant
Spaulding (referred to in this opinion as the defendant) operates a
restaurant.

*Jasper* v. *Michael A. Dolan, Inc.,* 355 Mass. 17, 18 (1968).

The validity of the license depends on whether G. L. c. 138, § 16C, as amended through St. 1971, c. 586, § 2, is applicable.[2] The relevant portion of that section reads: "Premises . . . located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto . . . ."[3]

The facts as found by the trial judge are not in dispute. The defendant operates a restaurant in Danvers located within five hundred feet of the Maple Street Congregational Church (church). In June, 1976, with the written consent of the church, the defendant obtained a wines and malt beverages license. In January, 1977, the defendant applied for an all-alcoholic license, but this time the church objected. Despite the church's written objection, the board of selectmen (board) granted the license, and the Alcoholic Beverages Control Commission upheld the board's action, ruling that "Chapter 138, section 16C is not applicable here." The trial judge agreed and construed the fifth paragraph of § 12[4] as authorizing the board to accept the surrender of the wines and malt beverages license and to issue an all-alcoholic license since

---

[2] All statutory references in this opinion, except where otherwise stated, are to G. L. c. 138, and only the section numbers will be indicated.

[3] No one contends that the section is invalid, and its constitutionality has recently been upheld. *Arno* v. *Alcoholic Beverages Control Commn.,* 377 Mass. 83 (1979).

[4] Section 12 relates to licenses for beverages to be drunk on the premises and governs both wines and malt beverages licenses and all-alcoholic beverages licenses. The fifth paragraph of the section has not changed since its enactment by St. 1934, c. 385, § 3, and reads in part: "The local licensing authorities may accept the surrender of a license issued under this section and may issue in place thereof to the same licensee any other form of license authorized under this section . . . . Different licenses issued as aforesaid for any portion of the same license year to the same licensee shall count as one license for the purposes of section seventeen."

the premises were already "licensed for the sale of alcoholic beverages" within the meaning of § 16C.

The plaintiffs argue that the all-alcoholic beverages license was a new license, that § 16C applies, and that the issuance of the license over the objection of the church was in excess of the board's statutory authority. We agree.

Section 16C must be read in connection with the other provisions of c. 138 relating to the granting of licenses and in light of its history. Prior to 1954, the only provisions in c. 138 relating to the licensing of premises close to churches or schools were a general provision in § 12 permitting local licensing authorities to take into account the character of the neighborhood,[5] and a requirement in § 15A (*infra*, note 9) that notice of an application for an original license had to be mailed to abutters, and to schools, churches and hospitals within a radius of five hundred feet of the property where the license was intended to be exercised.[6]

As originally passed in 1954,[7] § 16C contained a flat prohibition against the licensing of premises for the sale of alcoholic beverages within a certain distance of a school or a church. In 1968[8] the prohibition was made inapplicable to a church assenting to the licensing, and, in 1970, by St. 1970, c. 192, § 1, the prohibition was made applicable only to a church filing a written objection.

---

[5] The second sentence of the ninth paragraph of § 12 reads: "The licensing authorities may refuse to grant licenses under this section in certain geographical areas of their respective cities or towns, where the character of the neighborhood may warrant such refusal." The provision first appeared in the seventh paragraph of § 12, as originally enacted by St. 1933, c. 376, § 2, and has remained unchanged.

[6] The requirement was inserted in § 15A in 1939 and was continued in all subsequent amendments of that section. See St. 1939, c. 414; St. 1943, c. 542, § 5; St. 1965, c. 400; St. 1967, c. 523; St. 1968, c. 361; St. 1970, c. 192, § 2; St. 1971, c. 477, § 2.

[7] St. 1954, c. 569.

[8] St. 1968, c. 435.

Section 2 of the same act also amended § 15A to require that the notice sent to a church or school "shall indicate the necessity of a written objection to prevent the issuance or transfer of such license under the provisions of section sixteen C."

Section 15A[9] relates to the procedures required to obtain original licenses, and § 16A relates to applications for renewal of licenses. The latter section was amended by St. 1970, c. 352, to provide that, if on renewal the application is not for "the same type as the expiring license . . ., it shall be treated as an application for a *new* license and all the procedures set forth under [§ 15A] shall be applicable thereto" (emphasis supplied). Since § 15A nowhere refers to applications for *new* licenses, but only to applications for *original* licenses (see n.9), we read the 1970 amendment of § 16A to mean that the § 15A procedures for "original" licenses shall be applicable. This analysis leads to the conclusion that if the defendant had, at the time of the expiration of his wines and malt beverages license, applied for an all-alcoholic license under § 16A, the board would have been required to "treat" the application as one for an original ("new") license. The church would have had to receive notice under § 15A, and would have had the right to object under § 16C.[10]

_____

[9] In its present form, the first paragraph of § 15A provides that notice of all applications for an "original" license shall be published in the city or town where the license is intended to be exercised. The second paragraph provides in part that: "Every applicant for an original license under section twelve . . . or for a transfer of such a license from one location to another, or an applicant for a change in the description of a licensed premises . . ." shall send a copy of the published notice to the abutters, and to schools, churches and hospitals if located within a radius of five hundred feet of the premises. "The notice sent to such school, church or hospital shall indicate the necessity of a written objection to prevent the issuance or transfer of such license under the provisions of section sixteen C."

Statute 1971, c. 477, § 2, added the requirement that the notice to hospitals in the second paragraph of § 15A indicate the necessity of a written objection to prevent the issuance of a license under § 16C, although hospitals are not mentioned in § 16C and have no right to object under that section.

[10] Since §§ 15A and 16C were both amended by St. 1970, c. 192, we read the sections together to mean that if notice to a church is re-

The trial judge ruled that once the premises were licensed for alcoholic beverages, the defendant could surrender his wines and malt beverages license and obtain an all-alcoholic license under the fifth paragraph of § 12 (see note 4, *supra*) without §§ 15A or 16C being applicable. If this procedure were to be permitted, a licensee by proper timing could structure his application under the fifth paragraph of § 12 instead of applying for a renewal under § 16A, and thus vitiate the requirement that an application not of the "same type as the·expiring license" be treated as an application for a new license subject to the provisions of §§ 15A and 16C. Once having obtained the change under § 12, such a licensee could then, in November at the time for renewal, obtain a license under § 16A of the "same type as the expiring license" and never have to comply with § 15A. We do not construe the statute to permit such an anomalous result, and we do not believe that the fifth paragraph of § 12 was intended as an alternate means of obtaining a license without going through the requirements for either an original or a renewal license.[11]

Our conclusion is buttressed by the difference between wines and malt beverages and hard liquors. An all-alcoholic license is distinct both in quality and in character from a wines and malt beverages license.[12] The House

---

quired under § 15A, the church has the right to object under § 16C. But see the last paragraph of note 9, *supra*.

[11] Both the fifth paragraph of § 12 and § 16A were inserted by St. 1934, c. 385. The fifth paragraph is set forth in note 4, *supra*; § 16A as inserted by St. 1934, c. 385, § 6, read in part as follows: "The holder of a license ... who applies prior to December first in any licensing period for a license of the same class for the next succeeding licensing period shall be prima facie entitled thereto" provided that enough licenses are issuable under § 17. "Class" was not defined.

[12] The fees are also different. Section 12 prescribes a minimum fee of $250 and a maximum of $2,500 for a restaurant for an all-alcoholic beverages license and a minimum of $100 and a maximum of $1,000 for a wines and malt beverages license.

Report accompanying the bill which was a forerunner of G. L. c. 138 pointed out the "great difference between the inherent harmfulness of different kinds of alcoholic beverages . . . ."[13]

Courts, too, have recognized the difference between wine and hard liquor, particularly in zoning contexts. Thus, an all-alcoholic license was not protected as a preexisting use where the former use was pursuant to a wines and malt beverages license. *Jasper* v. *Michael A. Dolan, Inc.*, 355 Mass. 17, 24 (1968). In *Salerni* v. *Scheuy*, 140 Conn. 566, 571 (1954), cited in *Jasper* at 24, the court said: "As a matter of common knowledge it is also true that ordinarily a restaurant with a full liquor permit is quite a different sort of enterprise from a restaurant which sells only beer. It is a more ambitious establishment, partaking to at least some degree of the characteristics of a night club, rather than a quiet family eating place." See also *Town Council of Los Gatos* v. *State Bd. of Equalization*, 141 Cal. App. 2d 344, 349 (1956).

The purposes and effect of §§ 15A, 16A and 16C would, in our view, be frustrated if consent to a wines and malt beverages license by an institution entitled to object under § 16C precluded later objection to an all-alcoholic license or, as the defendant's logic would require, to a tavern license. We do not construe the fifth paragraph of § 12

---

[13] The House Report (1933 House Doc. No. 1300, at 5-6) urged "that this difference should not only be recognized in any statutory system, but should be utilized to lessen the evils of the traffic by encouraging and facilitating the sale and use of the less injurious kinds of beverages . . . ." The report noted that its position "was well stated in a letter of December 13, 1818, to a French friend by Thomas Jefferson as follows:

'No nation is drunken where wine is cheap; and none sober, where the dearness of wine substitutes ardent spirits as the common beverage. It is, in truth, the only antidote to the bane of whiskey. . . . Its extended use will carry health and comfort to a much enlarged circle. Every one in easy circumstances (as the bulk of our citizens are) will prefer it to the poison to which they are now driven by their government.' "

as eliminating the need to comply with these sections. We hold, therefore, that an applicant with an existing wines and malt beverages license who seeks an all-alcoholic license is subject to the requirements of §§ 15A and 16C, whatever be the timing of his application.[14]

In reaching this conclusion we are not unmindful of *Jasper* v. *Michael A. Dolan, Inc.*, 355 Mass. 17, 20-21 (1968), where the court construed a saving clause applicable to § 16C in a manner not fully consistent with our construction. However, we do not view *Jasper* as precluding the result reached here for a number of reasons, including: (1) the 1970 amendments of §§ 15A, 16A and 16C show an integral connection among those sections; (2) at the time of *Jasper*, § 16C contained a flat prohibition against the granting of liquor licenses in close proximity to a church; and (3) the question before the court was not whether the issuance of a wines and malt beverages license foreclosed later objection to an application for an all-alcoholic license. It should also be noted that in that case the court, for other reasons, enjoined the selling of all alcoholic beverages as a nuisance.

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[14] We are also somewhat influenced by the second sentence of § 23. That sentence reads in part as follows: "The provisions for the issue of licenses and permits hereunder imply no intention to create rights generally for persons to engage or continue in the transaction of the business authorized by the licenses or permits respectively, but are enacted with a view only to serve the public need and in such a manner as to protect the common good . . . ."