**GRENDEL'S DEN, INC., Plaintiff, Appellee,**

v.

**Herbert N. GOODWIN, et al., Defendants, Appellees,**

**Cambridge License Commission, et al., Defendants, Appellants.**

**GRENDEL'S DEN, INC., Plaintiff, Appellee,**

v.

**Herbert N. GOODWIN, et al., Defendants, Appellants.**

**Nos. 80–1653, 80–1654.**

United States Court of Appeals, First Circuit.

Reheard June 5, 1981.

Decided July 28, 1981.

Probable Jurisdiction Noted Jan. 11, 1982. See 102 S.Ct. 996.

Gerald J. Caruso, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Thomas Miller, Asst. Atty. Gen., Boston, Mass., were on brief, for Goodwin, et al.

Birge Albright, Boston, Mass., Sp. Counsel for the City of Cambridge, with whom Russell B. Higley, City Sol. and David B. O'Connor, Legal Counsel, Cambridge Law Department, Cambridge, Mass., were on brief, for Cambridge License Commission, et al.

Laurence H. Tribe, Cambridge, Mass., with whom David Rosenberg and Ira Karasick, Cambridge, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.*

* Judge Breyer did not participate in the decision of this case.

COFFIN, Chief Judge.

In this appeal, now being considered en banc, we determine whether a state, consistent with the establishment clause, may provide that premises shall not be licensed for the sale of liquor if a nearby church—defined as "a church or synagogue building dedicated to divine worship"—or school objects.

Appellee is a restaurant located in the Harvard Square area, a well-known business and entertainment center in Cambridge, Massachusetts. The Holy Cross Armenian Catholic Parish is located adjacent to appellee. In 1977, appellee, pursuant to a purchase agreement, applied to the Cambridge License Commission (CLC) for approval of an alcoholic beverage license. In Harvard Square and within 500 feet of the Holy Cross Church there are at least 26 premises licensed to sell liquor. Nonetheless Holy Cross objected to appellee's application. The CLC voted to deny the application, citing only Holy Cross's objection and noting that the church "is within 10 feet of the proposed location."

Appellee appealed this denial to the Massachusetts Alcoholic Beverages Control Commission (ABCC). After hearing, the ABCC upheld the CLC's action

"on the grounds that the governing board of the church objected ... under the provisions of Chapter 138, Section 16C, and this represents an absolute veto. [The ABCC] find[s] that the church's objection under Section 16C was the only basis on which the transfer was denied."

We state the text of section 16C in the margin.[1]

In late 1977, appellee brought suit in federal district court against the CLC and the members of the CLC and the ABCC in their official capacities. Appellee sought relief on four theories: that section 16C "on its face and as applied" violated the equal protection and due process guarantees, the establishment clause of the First Amendment, and the Sherman Act.[2] The appellants moved both that the court abstain and that it dismiss the complaint for failure to state a claim. After a voluntary continuance of the suit pending decision by the Massachusetts Supreme Judicial Court in *Arno v. Alcoholic Beverages Control Commission*, 377 Mass. 83, 384 N.E.2d 1223 (1979), a case that ultimately upheld section 16C against due process and establishment clause challenges, the district court denied the appellants' motion to dismiss. The litigants then stipulated to facts and moved for summary judgment on all counts except the "question of whether or not the church *in fact* exercised its power under ... § 16A in an arbitrary or otherwise discriminatory manner" (emphasis added).

The district court first ruled that the state's powers under the Twenty-first Amendment, which prohibits the importation of liquor into states in violation of their laws, cannot displace other constitutional guarantees. It then held that section 16C is a delegation of legislative power violating

---

1. "§ 16C. Licenses for premises near churches or schools

Premises, except those of an innholder and except such parts of buildings as are located ten or more floors above street level, located within a radius of five hundred feet of a church or school shall not be licensed for the sale of alcoholic beverages if the governing body of such church or school files written objection thereto, but this provision shall not apply to the transfer of a license from premises located within said distance to other premises located therein, if it is transferred to a location not less remote from the nearest church or school than its former location. The term governing body as used in the preceding sentence shall mean the school committee, in the case of a public school.

In this section a church shall mean a church or synagogue building dedicated to divine worship and in regular use for that purpose, but not a chapel occupying a minor portion of a building primarily devoted to other uses, and a school shall mean an elementary or secondary school, public or private, giving not less than the minimum instruction and training required by chapter seventy-one to children of compulsory school age.

This section shall not apply to an extension of licensed premises provided said extension does not exceed fifty feet."

2. The complaint asserted federal jurisdiction under 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 & 1343.

due process, as well as a law respecting an establishment of religion violating the First Amendment. It rejected appellee's equal protection arguments, but held that the state's actions were not immune from antitrust review under the doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942). The court consequently declared section 16C void in violation of the First and Fourteenth Amendments. *Grendel's Den, Inc. v. Goodwin*, 495 F.Supp. 761 (D.Mass.1980). It certified this judgment, together with its denial of the appellants' motion to dismiss under *Parker v. Brown*, pursuant to 28 U.S.C. § 1292. We consented to hear the appeal.

The original panel in this case, in a split opinion, reversed the district court's due process and establishment of religion judgments, but upheld its antitrust analysis. *Grendel's Den, Inc. v. Goodwin*, Nos. 80-1653 & 80-1654 662 F.2d 88 (1st Cir. 1981). Appellees petitioned for rehearing, which we denied, and for rehearing *en banc*, which we granted. We now conclude that the statute offends the establishment clause of the First Amendment. We do not reach the due process or antitrust claims.

■ As the Supreme Court has often announced, a statute does not offend the establishment clause so long as it has a secular purpose, its principal or primary effect neither advances nor inhibits religion, and it does not foster an excessive government entanglement with religion. *E. g., Committee for Public Education v. Regan*, 444 U.S. 646, 653, 100 S.Ct. 840, 846, 63 L.Ed.2d 94 (1980). Appellees do not contend that section 16C has other than a secular purpose. We thus pass to the second step of deciding whether section 16C has an effect respecting the advancement of religion that can be described as "principal" or "primary".

3. Indeed, the Court has gone so far as to say that statutes will not survive this scrutiny should there be the "mere possibility" that state assistance "might '*in part* have the effect of advancing religion.'" *Committee for Public Education v. Nyquist*, 413 U.S. 756, 784 n.39, 93 S.Ct. 2955, 2971, 37 L.Ed.2d 948 (1973) (emphasis in original) (quoting *Tilton v. Richardson*, 403 U.S. 672, 683, 91 S.Ct. 2091, 2098, 29 L.Ed.2d 790 (1971)).

■ A literal reading, without references to cases, of "principal" and "primary" might suggest that the question is whether the chief or dominant effect of section 16C's impact is the promotion of religion as opposed to some secular effect. We are instructed, however, that we need not attempt any such "metaphysical" "ultimate judgment". *Committee for Public Education v. Nyquist*, 413 U.S. 756, 783 n.39, 93 S.Ct. 2955, 2971, 37 L.Ed.2d 948 (1973). Rather the relevant question is whether the law "has the *direct* and *immediate* effect of advancing religion" as contrasted with "only a *remote* and *incidental* effect advantageous to religious institutions." *Id.* (emphasis added).[3] *See also Meek v. Pittenger*, 421 U.S. 349, 364–65, 95 S.Ct. 1753, 1762–63, 44 L.Ed.2d 217 (1975); *Sloan v. Lemon*, 413 U.S. 825, 832, 93 S.Ct. 2982, 2987, 37 L.Ed.2d 939 (1973).

There is no doubt that section 16C has *some* effect in advancing religion in that it confers upon churches a valued benefit or power. Looking to the substance of the law in question, *see, e. g., Sloan v. Lemon*, 413 U.S. at 832, 93 S.Ct. at 2987, section 16C permits Massachusetts churches to determine conclusively whether new premises in their area will be allowed to sell alcoholic beverages. *See Baser v. Spaulding*, 7 Mass. App. 268, 269, 386 N.E.2d 1306, 1307 (1979). It is true—whether or not one contemplates that a church and its neighbors may bargain over the sale of such an indulgence—that this grant of specialized political power is not direct state *fiscal* aid to religion. Precedents show, however, that the establishment clause's strictures are not confined to the context of cash supports to religion.[4]

4. *E. g., Epperson v. Arkansas*, 393 U.S. 97, 106, 89 S.Ct. 266, 271, 21 L.Ed.2d 228 (1968) ("antievolution" statute) ("the First Amendment does not permit the state to require that teaching and learning must be tailored to the principles or prohibitions of any religious sect or dogma"); *School District of Abington v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (school Bible readings); *Engle v. Vitale*, 370 U.S. 421, 431, 82 S.Ct. 1261, 1267, 8 L.Ed.2d 601 (1962) (official school pray-

The extent of the benefit at issue, moreover, is substantial. This benefit is the grant of a veto power over liquor sales in roughly one million square feet (the area of a circle of 500 feet radius from a church's property lines) of what may be a city's most commercially valuable sites. The statute simply requires that the church "object[ ]". Leaving aside the considerable due process issues of the lack of standards and the absence of any requirement of reasoned decision,[5] we note that the law vests every church with a power to give or deny to an establishment a privilege, the absence of which may threaten the viability of the enterprise and the presence of which may substantially enhance its profitability. Looking at this non-generalized grant to churches of a right of absolute discretion to confer or withhold an important commercial privilege in a teeming business and entertainment area in addition to their non-widely shared right to be free from the noise and disturbance attending nearby liquor sales, we are unable to say that this grant has only a "remote and incidental effect advantageous to religious institutions." *Nyquist*, 413 U.S. at 784 n.30, 93 S.Ct. 2965. The effect would perhaps be more striking if the churches' veto power were to extend to *any* place of business within 500 feet, but, we think, no more offensive to the establishment clause. The singling out of the liquor-selling segment of the business

and entertainment community is not *de minimis*.

We need not however, rely solely on these factors since section 16C contains a further and highly pertinent feature. The law distributes benefits on an *explicitly religious basis*. We are of course aware that, if possible, statutes are to be construed to avoid constitutional defects. But no reasonable reading by us of "church", when expressly defined as "a church or synagogue building dedicated to divine worship", can transform section 16C into a religiously neutral law. We face here a state law. Massachusetts' highest court recently read this law in a First Amendment context and found no special content or limitation apart from the ordinary meaning of the words employed.[6] *Arno v. Alcoholic Beverages Control Commission*, 377 Mass. 83, 90–93, 384 N.E.2d 1223, 1228–29 (1979). *See also Samel v. City of Pittsfield Licensing Board*, 377 Mass. 908, 384 N.E.2d 1230 (1979). We consequently are forced to the conclusion that section 16C's language at the very least distinguishes between religious and nonreligious groups by granting significant rights to the former that it withholds from the latter.[7]

Although laws containing explicit religious discrimination apparently have been too rare to appear for constitutional review in the Supreme Court,[8] there are many

---

ers) (proscribing governmental "power" and "prestige" as well as "financial support" in favor of religion).

**5.** It is no more satisfactory to say that churches can be relied upon not to violate some public trust inherent in this standardless grant of authority than it would have been to say in *Lemon v. Kurtzman* that churches can be trusted not to spend public monies for secular courses. *See* 403 U.S. 602, 618–19, 91 S.Ct. 2105, 2113–14, 29 L.Ed.2d 745 (1971).

**6.** The district court and the parties abstained from prosecuting the instant action for two years in anticipation of the decision in *Arno*. Since there can be no reasonable uncertainty about the meaning of the relevant language in section 16C after the *Arno* decision, there is no justification for the *further* abstention that appellants urge. *See, e. g., Druker v. Sullivan*, 458 F.2d 1272, 1274 (1st Cir. 1972).

**7.** Since our conclusion does not demand it, we refrain from deciding whether section 16C's use of the work "divine" inescapably means that this law also discriminates *between* religions. *But see Torcaso v. Watkins*, 367 U.S. 488, 495 & n.11, 81 S.Ct. 1680, 1684, 6 L.Ed.2d 982 (1961).

**8.** Appellants cite a number of cases in which laws have been upheld against establishment clause attack. None involve statutes with facially religious classifications. For instance, in *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the Court did uphold a New York statute that exempted from taxation property used for "religious, bible", and "missionary" purposes together with property used for "moral or mental improvement", "tract, charitable, benevolent, missionary, hospital, infirmary, educational, public playground, scientific, literary, bar association, medical society, library, patriotic, historical or cemetery

cases that lay down reliable guidelines. The landmark decision in *Everson v. Board of Education* recited that states "cannot exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or members of any other faith, *because of their faith, or lack of it*, from receiving the benefits of public welfare legislation." 330 U.S. 1, 16, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947) (emphasis in original). A few months ago the court reiterated this language. *Thomas v. Review Board,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981). The *Everson* court also made clear that states may not "pass laws which aid one religion, aid all religions, or prefer one religion over another." 330 U.S. at 15, 67 S.Ct. at 511. This direction also has been quoted frequently when First Amendment fundamentals are reviewed. *E. g., Board of Education v. Allen,* 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060 (1968); *Abington School District v. Schempp,* 374 U.S. 203, 216, 83 S.Ct. 1560, 1568, 10 L.Ed.2d 844 (1963); *Torcaso v. Watkins,* 367 U.S. 488, 493, 495, 81 S.Ct. 1680, 1683, 1684, 6 L.Ed.2d 982 (1961); *McGowan v. Maryland,* 366 U.S. 420, 443, 81 S.Ct. 1101, 1114, 6 L.Ed.2d 393 (1961); *McCollum v. Board of Education,*

333 U.S. 203, 210–12, 68 S.Ct. 461, 464–65, 92 L.Ed. 649 (1948). *See also Roemer v. Board of Public Works,* 426 U.S. 736, 746, 96 S.Ct. 2337, 2344, 49 L.Ed.2d 179 (1976); *Walz v. Tax Commission,* 397 U.S. at 695, 90 S.Ct. 1409, 25 L.Ed.2d 697 (opinion of Harlan, J). *Zorach v. Clauson,* 343 U.S. 306, 314, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952). The lesson that inescapably emerges from this consistent judicial tradition is that legislation conditioning the receipt of any significant benefit, power, or privilege on the commitment of the members of the recipient group or institution to a religious faith is inherently a "law respecting an establishment of religion".

Section 16C extends its benefits beyond churches to schools, which are defined as "elementary or secondary school[s], public or private, giving not less than the minimum instruction and training required by [state law] to children of compulsory school age."[9] This does not dilute its forbidden religious classification. The legislation defines in some detail the additional group to which it extends benefits—schools—and this definition cannot encompass all who are otherwise similarly situated to churches

---

purposes". *Id.* at 667 n.1, 90 S.Ct. at 1410. Yet central to the court's reasoning was the fact that New York "has not singled out one particular church or religious group or even churches as such; rather, it has granted exemption to all houses of worship within a broad class of property owned by nonprofit, quasi-public corporations". *Id.* at 673, 90 S.Ct. at 1413. *See also id.* at 697–70 & n.1, 90 S.Ct. at 1426–27 (opinion of Harlan, J.). Similarly, the Sunday closing laws reviewed in *McGowan v. Maryland,* 366 U.S. 420, 453–59, 81 S.Ct. 1101, 1119–22, 6 L.Ed.2d 393 (1961), were by their terms applicable to all citizens. *See also, e. g., Everson v. Board of Education,* 330 U.S. 1, 3 n.1, 67 S.Ct. 504, 505, 91 L.Ed. 711 (1947) (permitting school boards to make transportation contracts for all "children living remote from any schoolhouse"). *Compare Welsh v. United States,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) (apparent religious discrimination in federal conscientious objector law construed to the contrary by four members, with fifth vote concurring in the result based on statute's violation of the establishment clause).

Appellants also point to two state decisions that upheld liquor laws involving churches

against constitutional attack. In *Horne v. Hernando County,* 297 So.2d 606 (Fla.Dist.Ct.App. 1974), the statute differed from the present section 16C in that it barred all new alcohol sales within 1500 feet of an established church or school. Churches thus were granted no discretionary veto power. Nor were they defined in that case as limited to houses of "divine worship". Similarly, "church" was left undefined in *Wiles v. Michigan Liquor Control Commission,* 59 Mich.App. 321, 229 N.W.2d 434 (1975), although the statute there did give churches a veto power. In addition to these distinctions, we observe that the establishment clause analysis in each case was cursory. *See also California v. Larue,* 409 U.S. 109, 120, 93 S.Ct. 390, 398, 34 L.Ed.2d 343 (1972) (Stewart, J., concurring).

**9.** Appellee argues that many Massachusetts schools are in fact religious. Our ground for decision makes it unnecessary for us to consider this contention. *Cf. Rhode Island Federation of Teachers v. Norberg,* 630 F.2d 855, 859–61 (1st Cir. 1980) (examining facts to determine the "true color" of a facially neutral benefit).

in all respects except dedication to "divine worship".[10]

We therefore conclude that section 16C has a "primary" or "principal" effect of advancing religion.[11] Consequently the district court's holding that section 16C is unconstitutional is *affirmed.*

LEVIN H. CAMPBELL, Circuit Judge (dissenting).

My reasons for believing that section 16C is constitutional are set forth in the panel's decision, and I do not repeat them. By way of supplement, however, I add the following.

I think the court strains to find an establishment clause violation. This case does not involve a grant of state fiscal aid to religious institutions. Neither does it (although the court seems to imply otherwise) involve the placing of governmental power and prestige behind religious dogma. *Cf. Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 238 (1968); *School District of Abbington v. Schemp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Engle v. Vitale,* 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962). Nor can this case by any stretch of the imagination be equated with those in which governmental privileges have been granted or denied individuals on the basis of their religious beliefs. *See Thomas v. Review Board,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Torasco v. Watkins,* 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *cf. Welsh v.*

*United States,* 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

My colleagues hold that carving out a zone of protection for churches and schools against liquor-serving establishments constitutes a "law respecting the establishment of religion" because it conditions a "valued benefit or power" upon the commitment to a religious faith. However, section 16C must be viewed against the accepted practice in our society of enacting zoning and other land-use planning laws designed to protect uses believed to require peace and quiet from more offensive and raucous uses—among the latter of which, historically, liquor service stands preeminent. Section 16C regulates only the uses of buildings and property; it is not the sort of law (such as those relating to conscientious objector status) which seeks to ascertain the "beliefs" of individuals. One can be entirely irreligious and still prefer to give an edge to churches over liquor-serving establishments in land-use planning.

Plainly, section 16C was not designed, in some active way, to "promote" or "advance" religion. Its object is only to limit a use—realistically viewed as having a potential for nuisance—where it may encroach upon the sensibilities of persons engaging in church-type activities (which might range from worship to mens' clubs and scouting) commonly believed even by non-religious persons to require a different environment from that associated with liquor service. Similar considerations might lead the legislature to protect hospitals and libraries

10. We observe that the present form of section 16C has been in place since 1970. Prior to this time the state sought to regulate this aspect of alcohol sales by different means. *See Arno,* 377 Mass. at 86–89, 384 N.E.2d at 1226–27. Since these prior formulations are no longer in effect, we do not consider them in our analysis here and express no opinion as to their constitutional validity.

11. Because section 16C substantially abridges the First Amendment, appellee has standing to mount this facial attack on the statute even though it might be similarly affected by a properly drawn law. *See, e. g., Village of Schaubmerg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 835, 63 L.Ed.2d 73 (1980).

The Twenty-first Amendment does nothing to alter our decision in this case. *See Olitsky v. O'Malley,* 5£7 F.2d 295 (1st Cir. 1979); *Women's Liberation Union v. Israel,* 512 F.2d 106 (1st Cir. 1975).

Our conclusion regarding primary effect obviates the need to consider whether section 16C also causes excessive entanglement with religion. *Meek v. Pittenger,* 421 U.S. 349, 363 n.13, 95 S.Ct. 1753, 1762, 44 L.Ed.2d 217 (1975) (no further consideration needed once primary effect found). It also makes it unnecessary for us to consider the district court's alternative due process analysis since this at most could provide parallel support for the finding of unconstitutionality. The same is true of its antitrust reasoning, since appellee informs us that it makes no claim for money damages.

against incompatible neighbors—indeed it is commonplace to outlaw liquor establishments from residential areas.

If my brothers' analysis is to stand, the first amendment must rule out not only the present law but even the most modest laws banning liquor licenses next door to a church. Land-use planning would have to ignore churches altogether since such planning would confer a "valued benefit or power" upon them.

Surely such an analysis cannot be right. Indeed, the free exercise clause would seem to mandate that churches be allowed the same type of consideration that the legislature might constitutionally give to some other quiet-seeking land use as part of the legislature's overall power to organize the different land uses in a generally acceptable pattern.

The kind of land-use planning here in issue is, moreover, better left to legislatures. Most members of the electorate—even most churchgoers—are likely to appreciate a good meal and an occasional drink. They are well able, through their legislators, to strike a balance between overprotecting churches and underprotecting the owners of restaurants and bars and their patrons. The decisions that must be made are part of a zero sum game where success on one side means loss on the other. Surely society as a whole should be allowed to make such decisions which fine-tune the sort of society we live and work in. The court's fiat means that even if a large majority of the citizenry wishes an accommodation more favorable to land uses such as churches—because of the peace and quiet associated with them, their esthetic value, and the special qualities they lend to the community, not necessarily because of their religious connotations—the majority must lose out. I see nothing in the first amendment which so divests the citizenry of their right to regulate the kind of community they wish to inhabit.