**J.A. WEINBERG, Jr., et al., Plaintiffs,**

v.

**Marion S. BARRY, et al., Defendants.**

**Civ. A. No. 83–2701.**

United States District Court,
District of Columbia.

Jan. 30, 1985.
Final Order and Judgment
March 7, 1985.

William W. Taylor, III, Douglas C. Herbert, Zuckerman, Spaeder, Moore, Taylor & Kolker, Washington, D.C., for plaintiffs.

Robert J. Harlan, Jr., Asst. Corp. Counsel, Acting Chief, Litigation Section, Community Development Div., Jonathan L. Farmer, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs are trustees for the beneficial owners of a property in downtown

Washington that was improved in 1922 by the erection of a combination theater and office building known as the Warner Building. Defendants are, in addition to the Mayor of the District of Columbia, the Joint Committee on Landmarks of the National Capital ("Joint Committee"), and the District of Columbia Historic Preservation Review Board ("Review Board" or "Board"). In recent years these agencies have, *seriatim*, been responsible for the designation of properties as historic landmarks within the District of Columbia. *See infra* at 2–4. Intervenor is Don't Tear It Down, Inc. ("DTID"), a non-profit corporation interested in the preservation of District of Columbia landmarks.[1]

The successive tenures of the Joint Committee and the Review Board in dealing with historic landmark preservation in the District of Columbia started with the Joint Committee—an inter-governmental agency under the sponsorship of the Mayor of the District of Columbia and two federal agencies, the National Capital Planning Commission, *see* 40 U.S.C. § 71a, and the Commission on Fine Arts, *see* 40 U.S.C. § 104. *See A & G Limited Partnership v. Joint Committee on Landmarks*, 449 A.2d 291, 292 (D.C.1982). In 1968, the Commissioner of the District of Columbia, the National Capital Planning Commission, and the Commission on Fine Arts entered into "an executive agreement authorizing the Joint Committee to act as the State Review Board of the District of Columbia in order for the District to 'qualify for participation in the federal historic preservation program instituted under the National Historic Preservation Act of 1966 [6 U.S.C. §§ 470 *et seq.* (1982) ("federal act")].'" *Id.* (quoting *La-*

*timer v. Joint Committee on Landmarks*, 345 A.2d 484, 485 (D.C.1975) (footnote omitted)). This arrangement was renewed in 1972, 1974, 1978, and 1980. *See id.; see also* Complaint ¶¶ 14–20; Answer ¶ 9.

.On December 27, 1978, the District of Columbia enacted the District of Columbia Historic Landmark and Historic District Preservation Act, D.C.Code 1981, §§ 5–1001 *et seq.* ("D.C. act") (1981 & 1984 Cum. Supp.), which came into effect shortly thereafter, *see id.* §§ 1–233(c)(1); 5–1015. The D.C. act provided that

"Any body which functions as the District of Columbia State Review Board pursuant to the Act of October 15, 1966 (16 U.S.C. § 470 *et seq.*) as of the effective date of this chapter, shall function as the Review Board pursuant to this section until a Review Board is established and its members nominated by the Mayor and confirmed by the Council of the District of Columbia pursuant to this section."

*Id.* § 5–1003(a). Beginning in early 1979, thus, the Joint Committee served as professional review board not only for the purposes of the federal act, but for the implementation of the D.C. act as well. *See A & G Limited Partnership v. Joint Committee on National Landmarks, supra.*

Subsequently, on May 6, 1983, the District of Columbia finally established the District of Columbia Historic Preservation Review Board ("Review Board") pursuant to D.C.Code § 5–1003(a). Complaint ¶ 34; Answer ¶ 15. On May 9, 1983, the Mayor submitted nominations for membership on the Review Board to the District of Columbia City Council, and on July 21, 1983, the

---

**1.** Although the Court has not heretofore ruled on DTID's Motion to Intervene, DTID has—since the motion was filed—been allowed fully to participate in all hearings in this action as *amicus curiae*. Without ruling on DTID's claim that it is entitled to intervention as of right pursuant to Fed.R.Civ.P. 24(a), the accompanying Order will grant DTID's motion for permissive intervention pursuant to Fed.R.Civ.P. 24(b). Considering all the circumstances of this case, DTID's Motion to Intervene was not untimely. Given that the Warner Theater landmark applications at issue in this action were filed by

DTID, and that DTID's aim in seeking intervention is to defend the validity of its own applications and the subsequent status of the Warner Theater against plaintiffs' challenges, it is clear that common questions of law and fact exist between the main action and the defense that DTID seeks to assert. In light of the fact that DTID has agreed to be bound by the record up to this point, *see* Memorandum in Support of Motion to Intervene at 17, the intervention "will not unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R. Civ.P. 24(b).

City Council confirmed the Mayor's nominees. Complaint ¶ 34; Answer ¶ 15. On July 21, 1983, accordingly, landmark designation authority under the federal act and D.C. act passed to the Review Board as the successor agency to the Joint Committee, *see* D.C.Code § 5–1003(a), and thus it is the Review Board that has implemented the statutes within the District of Columbia since that time.

As in many jurisdictions, buildings within the District of Columbia may generally be altered or demolished only upon application by an owner for a permit ("permit application") and approval of the permit by the appropriate D.C. agency (i.e., the District of Columbia Department of Licenses, Investigations, and Inspections, *see* Mayor's Order No. 78–42 (February 17, 1978) ["Department of Licenses"] ). *See* D.C.Code § 5–426. In the absence of historic landmark designation, permits may be issued without requiring the permit applicant to make any special showing generated by history-related concerns. Landmark designation under the D.C. act, however, has the effect of requiring the owner of a designated property to persuade the Mayor of the District of Columbia—as a prerequisite to issuance of a permit—that alteration or demolition of the property is "necessary in the public interest" or that failure to effect the alteration or demolition would result in "unreasonable economic hardship" to the owner. D.C.Code §§ 5–1004(e), 5–1005(f).

In addition, there are three procedural aspects of the D.C. act that are of particular relevance to this action. First, although landmark applications may be filed, under applicable regulations, only by certain specific classes of parties, those classes include any third-party organizations, such as intervenor, "which include[ ] among [their] purposes the promotion of historic preservation in the District of Columbia." Procedures for the Designation of Historic Landmarks and Historic Districts § 310.30, *reprinted in* Plaintiff's Motion for Summary Judgment, Appendix G. Second, the D.C. act provides that the mere filing of an application for landmark designation of a property ("landmark application") automatically requires that the property be treated as a landmark pending the resolution of the application. *Id.* § 5–1002(6)(B). Such an application, thus, automatically requires the owner of the property to make the special showing of public interest or economic hardship required by the D.C. act in order to obtain a permit for alteration or demolition of the building. Finally, the filing of a permit application for alteration or demolition of the property also allows an owner of property for which a landmark application has been filed to protect himself from protracted uncertainty as to the status of his property. Specifically, the statute provides that where a *landmark* application with respect to any property has been filed and is pending, and a *permit* application is also filed, the agency implementing the D.C. act

> will determine within 90 days of receipt of [the permit] application ... whether to list such property [as a historic landmark], and any property not so listed will not be considered a historic landmark
> . . . .

D.C.Code § 5–1002(6)(B).

In this statutory context, intervenor DTID, on April 6, 1981, filed an application with the Joint Committee for the designation of the *exterior* of the Warner Theatre as an historic landmark. On November 24, 1982, intervenor filed a second application seeking to designate as a landmark the *interior* portion of the building as well.

While the landmark application with respect to the *exterior* of the building was still pending, plaintiffs, on November 26, 1982, filed with the Department of Licenses an application for a permit to alter a portion of the exterior—namely, the doorway.[2]

---

**2.** There is some ambiguity as to the scope of the November 26, 1982 permit application. Plaintiffs describe the permit application as one "to make alterations to *an entrance area* of the Warner Building." Statement in Support of

Plaintiffs' Motion for Summary Judgment at 27 (emphasis added). *See also id.* at 66 (referring to November 26, 1982 permit as one "to alter *an entrance area* of the Warner Building....") (emphasis added). Defendants, on the other

At almost the same time, on November 30, 1982, the Joint Committee held a hearing on the exterior landmark application filed by DTID. Subsequently, on December 30, 1982, the Department of Licenses approved the November 26, 1982 permit application and granted the permit to alter the doorway but it did so, contrary to the requirements of D.C.Code § 5–1004, without the permit application having been reviewed by the Joint Committee or the Mayor. The Joint Committee reached a final decision as to the landmark application only on May 18, 1983, when it issued an opinion that the Warner Theatre exterior facade *was* a landmark.

As to DTID's November 24, 1982 application to designate the *interior* of the Warner Building as a landmark, no action has ever been taken either by the Joint Committee or by its successor, the Review Board. The landmark application remains pending. No permit applications have in the interim been filed to alter or demolish the interior of the building.[3]

Plaintiffs commenced this action with a fourteen count, thirty-seven page complaint asserting that defendants have acted unlawfully and unconstitutionally to cause, and to threaten to cause, irreparable injury to plaintiffs. The complaint alleges that

the 1981 landmark application with respect to the *exterior* of the building and the 1983 Joint Committee opinion designating the exterior of the building as a landmark immediately and irreparably damaged plaintiffs by depriving them of the use and enjoyment of their property, and diminishing its value. The injury is allegedly effected or threatened by the D.C. statute as applied because it subjects alterations or modification of the building to the aesthetic judgment of the Joint Committee and/or the Review Board, with relief available only if, in the judgment of the Mayor, modification or alteration is "necessary in the public interest" or preclusion of such modification or alteration would result in the imposition of "undue economic hardship" on the owner.

Plaintiffs also allege that the pending 1982 landmark application with respect to the *interior* of the building burdens plaintiffs' use of the building's interior (by making modification of it subject to special, onerous review procedures), diminishes the building's commercial value, and "forces plaintiffs to maintain at their own expense a wholly private portion of the building, its interior, as a public landmark." Complaint at 11.

hand, state that the November 26, 1982 application was "an application for an alteration permit for *the doorway* of the Warner Building." Defendant's Opposition to Plaintiffs' Motion at 5 (emphasis added); *id.* at 54 (same language).

These factual assertions, despite their lack of specificity, make clear that the desired alteration *would* have affected some, but not all, of the *exterior* of the Warner Building. It may thus be concluded that the November 26, 1982 permit application did trigger the 90-day decision period contained in D.C.Code § 5–1002(6)(B) with respect to the April 6, 1981 DTID application to have the *exterior* of the Warner Building designated a landmark. *See* Application Form: Historic Landmark Designation No. 81–3, § 310.22 (filed by DTID on April 6, 1981, to have the *exterior* of the Warner Building designated a landmark) (referring, in the description of the property to be designated, to various "entrance[s]" to the Warner Building), *reprinted in* Plaintiff's Motion for Summary Judgment, Appendix B.

At the same time, the parties' factual assertions—even those by plaintiffs alone—fail to es-

tablish that the desired alteration of the "entrance area" would also have affected the *interior* of the Warner Building. Plaintiffs describe the November 24, 1982 DTID landmark application as covering the *"theater portion of the interior"* of the Warner Building. Plaintiffs' Statement of Material Facts ¶ 69 (emphasis added); *see also* Complaint ¶ 29 (same language). Defendants also describe the November 24, 1982 landmark application as covering the *"theater portion"* of the Warner Building. Defendants' Statement of Material Facts ¶ 37. In the absence of any facts tending to suggest that the November 26, 1982 "entrance area" permit application would have affected the theater portion of the interior of the Warner Building, there is no basis for a finding in a summary judgment context that the permit application triggered the 90-day decision provision in D.C. Code § 5–1002(6)(B) with respect to the interior landmark application.

**3.** *See supra* note 2.

The plaintiffs challenge the D.C. statute on numerous grounds. They argue, for example, that the D.C. statute is constitutionally invalid because it delegated governmental powers to what plaintiffs contend was a private body (the Joint Committee), and because it allows any property to be temporarily designated as a landmark without any process, merely upon the filing of an application for designation. The complaint further challenges both the final designation of the exterior of the Warner Building and the temporary designation of the building's theater interior as an unconstitutional taking of plaintiffs' private property without just compensation.

On a statutory level, plaintiffs assert several pendent claims under District of Columbia law.[4] The complaint challenges the continuing validity of the exterior designation because the Joint Committee failed to determine within 90 days after receiving a permit application for modification of the exterior whether to designate the exterior as a landmark, as required by D.C.Code § 5–1002(6)(B).[5] In addition, the plaintiffs complain that the Joint Committee was, under the governing statute, improperly constituted. Finally, the complaint alleges that the Joint Committee's exterior designation decision was not supported by the evidence, and violated the D.C. Administrative Procedures Act.

■ Plaintiffs have alleged and adequately demonstrated a threat of injury to the value of their property which gives them standing. *See Warth v. Seldin,* 422 U.S. 490, 499–501, 504, 95 S.Ct. 2197, 2205–2207, 2208, 45 L.Ed.2d 343 (1975). The matter is now before the Court on cross-motions[6] for summary judgment.[7]

## I. Exterior of the Warner Building.

■ With respect to the exterior of the Warner Building, the landmark designation must be set aside on statutory grounds arising from plaintiffs' pendent claims under District of Columbia law.[8] Section 5–1002(6)(B) specifically provides that when a landmark application as to any property is pending, the entity implementing the D.C. Act "will determine within 90 days of receipt of an application [for a permit to alter or demolish the property] ... whether to list such property, and any property not so listed will not be considered a historic landmark ..." This mechanism for triggering prompt disposition of an application is supported by strong policy considerations. Indeed, if the statute permitted action on landmark applications for which a permit application was also pending to be unreasonably delayed, the statute might well be vulnerable to challenge on well-established constitutional and administrative law

---

**4.** Several of these pendent claims are reiterated as if they were also federal law violations. The disposition of the case on the pendent claims makes it unnecessary to reach any federal claim with respect to the exterior that may be lurking in the pleadings. *See National Senior Citizens Law Center v. Legal Services Corporation,* 751 F.2d 1391, 1395 (D.C.Cir.1985).

**5.** The complaint also suggests that the November 26, 1982 permit application to modify the exterior triggered the 90 day decision requirement contained in D.C.Code § 5–1002(6)(B) with respect to the *interior* landmark application as well. *See* Complaint at 26–27. As is evident from the factual findings set forth *supra* at note 2, there is no basis on this record for such a proposition, and thus there is no occasion to consider plaintiffs' claim that the interim designation has expired by operation of the 90-day rule.

**6.** As noted, the Court has granted the motion of amicus Don't Tear It Down, Inc., to intervene. *See supra* note 1.

**7.** In the exchange of pleadings on these motions, plaintiffs' counsel have filed a 73-page statement of law and authority, defendants have responded with a 60-page memorandum, and plaintiffs have submitted a further memorandum of 39 pages.

**8.** The Court, thus, does not pass on plaintiffs' federal constitutional claims with respect to the exterior designation. Federal courts are admonished to avoid ruling on constitutional questions "if there is also present some other ground upon which the case [or any portion of it] may be disposed of." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *see New York City Transit Authority v. Beazer,* 440 U.S. 568, 582, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979).

grounds. *Cf. Telecommunications Research and Action Center v. FCC,* 750 F.2d 70, 79–80 (D.C.Cir.1984); *Southern National Bank v. Austin,* 582 S.W.2d 229, 238–39 (Tex.Civ.App.1979). Indeed, defendants themselves argue that the imposition of landmark status immediately upon the filing of a landmark application "cannot be held unconstitutional" in part because the 90-day decision mechanism "provid[es] building owners with a timely opportunity to contest the designation." Defendant's Opposition to Plaintiff's Motion at 50.

In this case, intervenor filed a landmark application with respect to the Warner Building exterior on April 6, 1981. Plaintiff, in turn, filed—on November 26, 1982—a permit application with the D.C. Department of Licenses to modify the Warner Building's doorway. The Joint Committee's decision to designate the exterior as a landmark, however, was not promulgated until May 18, 1983—far more than 90 days after the permit application was filed.

■ Defendants claim that the 90 day period was never triggered in this case because—through administrative oversight—the permit application filed with the appropriate D.C. licensing agency was allegedly never transmitted to or "received" by the Joint Committee.[9] *Id.* at 54. Defendants themselves admit, however, that the mechanism by which owners can force a decision on a landmark application within 90 days provides property owners with an important protection, the absence of which

could well undermine the constitutional validity of the Act. *See id.* at 44, 50. Defendants, thus, cannot be heard to argue that this protective feature of the statutory scheme can be eviscerated by agency mismanagement for which defendants are responsible.

Defendants also contend essentially that even if the 90 day period was triggered, it was tolled by the fact that the permit application (which addressed at least part of the exterior, namely, the doorway) was in fact granted—although without review by the Joint Committee or the Mayor as required by the D.C. act—by the Department of Licenses on December 30, 1982. Again, however, defendants cannot be heard to argue that this important statutory device for accelerating landmark decisions can be short-circuited by the defendant's deliberate or inadvertant departure from the statutory scheme. The fact that the permit was actually granted might moot the case if the only interest at issue were the doorway. But the landmark designation overhangs the entire exterior. The permit process is the only statutory avenue available to an owner within the provisions of the D.C. act to precipitate prompt consideration of a landmark application and review of any decision about it. The failure of the Joint Committee in this case to address the issue within 90 days clears the way for routine processing of future permit applications with respect to the exterior, insofar as they might be affected by the April 6, 1981 landmark application.[10]

9. The D.C. act by its terms imposes no duty upon the property owner in such a case to transmit the permit application to the Joint Committee or Review Board. In this case, however, there is evidence in the record that is not disputed by defendants that plaintiffs made a wholly sufficient effort independently to notify the Joint Committee of the pendency of their permit application, by sending a letter to that effect to the Chairman of the Joint Committee on or about December 22, 1982. *See* Plaintiffs' Consolidated Opposition and Reply, Appendix 1. Even if the 90-day cycle were deemed to have been triggered on that date, the Joint Committee's May 18, 1983 decision on the landmark application would still have fallen outside the statutory period.

10. This interpretation of the statute is adopted in part because, as noted *supra* at 10–11, serious questions regarding the constitutionality of the act would be raised if the District of Columbia could in this fashion deprive property owners of the only apparent method provided for in the D.C. act by which owners might trigger a prompt decision by the appropriate agency on a pending landmark application. *Cf. United States v. Thirty-Seven (37) Photographs,* 402 U.S. 363, 368–70, 91 S.Ct. 1400, 1404–05, 28 L.Ed.2d 822 (1971); *Loveday v. FCC,* 707 F.2d 1443, 1459 n. 24 (D.C.Cir.1983). At the same time, nothing in this memorandum is intended to preclude any remedies that might be available against any action or inaction by the Joint Committee or the Review Board under the D.C. Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.*

■ Thus, it is apparent that the Joint Committee's designation of the exterior of the plaintiffs' property was untimely and unlawful. Unless and until another *landmark* application with respect to the Warner Building exterior is filed, any future applications for *permits* to alter or demolish the exterior of the Warner Building may be filed with, considered by, and acted on by the Department of Licenses without any referral to the Review Board or the Office of the Mayor for consideration of the public interest or degree of economic hardship. As suggested, however, this ruling does not preclude further appropriate action by the Review Board pursuant to the D.C. act on any subsequent or renewed landmark application with respect to the exterior of the Warner Building. The parties have not addressed, and therefore this ruling does not determine, the validity of any further *landmark* application or designation, or its effect upon some future *permit* application.[11]

In view of this disposition, there is no occasion to address the several other issues raised by plaintiffs with respect to the exterior of the building.

## II. Interior of the Warner Building.

Plaintiffs' challenge to the present effect of the D.C. act on the status of the interior of the building comes before the Court in a different posture, in that plaintiffs have not filed any *permit* application triggering the statutory 90-day review cycle. Nor has the Review Board or its predecessor issued any decision on intervenor's pending landmark application with respect to the interior. Instead, DTID's November 24, 1982 application to designate the interior of the Warner Building as a landmark remains simply pending before the Review Board. Plaintiffs complain merely that the pending landmark application has had the effect of subjecting the interior of the Warner Building to the provisions of the D.C. Act pending resolution of the application.

■ The burden imposed by the temporary designation of the interior of the Warner Building while DTID's landmark application remains pending is not negligible.[12] Nonetheless, this interim burden does not rise to constitutional proportions, and the process by which it was imposed is similarly free of constitutional defect. First, the automatic imposition of landmark status on the interior of the Warner Theater upon the filing of the November 24, 1982 landmark application by DTID does not constitute an impermissible delegation. A third-party landmark application merely places the property in question on the Review Board's (or, previously, the Joint Committee's) docket. The interim designation of the building pending the Review Board's actual decision on the landmark application is effected on the authority of the Board, albeit at the instance of the landmark appli-

11. Intervenor has expressed concern during the hearings in this matter that plaintiffs allegedly intend in further proceedings to press the argument that, once the 90-day decision period has been triggered, failure by the Joint Committee or the Review Board to reach a decision within the requisite 90 days thereafter renders the property in question immune—in perpetuity—from landmark designation under the D.C. act. In the instant case, however, no such *subsequent* effort to apply for or grant landmark status upon a property is before the Court. Neither has this issue been addressed in any of the briefs submitted in this matter. Thus, there is no occasion to address, or issue any ruling as to, the effect or validity under the D.C. act of any subsequent landmark application that might be filed by any party with respect to the Warner Building's exterior.

12. Defendants and intervenor contend that the mere filing of a landmark application has no effect on the interests of the affected building's owner. This argument, however, ignores the plain fact that even the filing of a landmark application can have and in this case apparently did have at least some effect on the market value of the owner's property. Neither defendants nor intervenor dispute plaintiffs' representations that the imposition of interim landmark status on the exterior of the Warner Building played a role in the disruption of a commercial arrangement to sell the Warner Building in 1982. *See* Statement in Support of Plaintiffs' Motion for Summary Judgment at 9–10; *cf. Citizens Committee to Save Historic Rhodes Tavern v. District of Columbia Department of Housing and Urban Development,* 432 A.2d 710, 718 (D.C.1981) *cert. denied,* 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981).

cant. If the Board thereafter fails to act within the requisite 90 days after a permit application is filed, there would be no interference with any destruction or modification pursuant to permit. Thus, although third-parties such as DTID may choose to initiate the process, it is the Review Board that is implementing the D.C. act. As the Supreme Court ruled in *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 439 U.S. 96, 108–09, 99 S.Ct. 403, 411–12, 58 L.Ed.2d 361 (1978): "an otherwise valid regulation is not rendered invalid simply because those who the regulation is designed to safeguard may elect to forego its protection." Conversely, filing an application merely invokes the *temporary*, predecisional protection afforded to a qualified applicant by operation of law. *Compare Grendel's Den, Inc. v. Goodwin*, 495 F.Supp. 761, 765 & n. 8 (D.Mass.1980) (permanent effect of third-party application invalid), *aff'd on rehearing*, 662 F.2d 102 (1981) (*en banc*), *aff'd sub nom, Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982).

■ Second, the imposition of landmark status for the period until the Review Board acts on a pending landmark application (or until 90 days passes without a decision following the filing of a *permit*. application) does not violate plaintiffs' due process rights. As described earlier, the 90-day decision mechanism allows plaintiffs themselves to trigger a prompt hearing (pursuant to applicable regulations) and a timely and reviewable final decision on the landmark application. On this record, the economic interests at stake do not outweigh the public purpose of the landmark restrictions during the temporary designation period sufficiently to require a prior hearing. It is well established that even Social Security disability benefits may be cut off before a hearing, without violating due process principles. *Mathews v. Eldridge*, 424 U.S. 319, 340–50, 96 S.Ct. 893, 905–10, 47 L.Ed.2d 18 (1976). That precedent makes it difficult to accept plaintiffs' contention that temporary designation

pending a hearing and designation decision that is not unreasonably delayed [13] violates constitutional due process principles.

■ Third, the application of the D.C. act during the period prior to a final designation decision by the Review Board does not constitute an unconstitutional taking any more than would a temporary (not to mention a permanent) zoning change. *See Agins v. Tiburon*, 447 U.S. 255, 262–63 & n. 9, 100 S.Ct. 2138, 2142–43, & n. 9, 65 L.Ed.2d 106 (1980). The D.C. act itself articulates the strong public interest in historically significant property. At the same time, the burden imposed by the D.C. act during the pendency of a landmark application is susceptible to the owner's own control, in that its duration can be limited as described above through the filing of a permit application by the owner himself. Plaintiffs themselves, thus, have the power to expedite consideration of the Warner Building interior landmark application, and can in this fashion limit the duration of the burden imposed by the interim landmark designation.

Plaintiffs report, moreover, that the theater interior of the Warner Building is presently being leased out commercially, Plaintiff's Statement of Material Facts ¶ 96, which indicates that the property during this interim does have *some* economic use, if possibly not the most lucrative one. *See 900 G Street Associates v. Department of Housing and Urban Development*, 430 A.2d 1387, 1390–91 (D.C.1981). Having filed no permit application, the owners of the Warner Building cannot plausibly contend that the interim landmark designation of the building's interior has unconstitutionally deprived them of all viable economic uses of the property during the interim period. *See id; Agins v. Tiburon, supra*, 447 U.S. at 262–63 & n. 9, 100 S.Ct. at 2142–43 & n. 9. Accordingly, with respect to the interim designation of the Warner Building interior, no unconstitutional taking can be found. *See generally id.; Penn Central Transportation Co.*

---

**13.** *See infra* at 399.

*v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

In reaching this conclusion the Court has not overlooked the possibility that plaintiffs' purpose is to clear the landmark designation solely to enhance the merchantability of the property, and that they have not filed a permit application because they have no interest in demolishing or remodeling the building on their own account. As noted, the permit process is the only means provided by the D.C. act itself for precipitating the Review Board's action on a landmark application. But even in the absence of a permit application, the failure by the Joint Committee and the Review Board to reach any determination with respect to the interior landmark application—despite the passage of over two years since November 24, 1982, when the interior landmark application was filed—raises serious questions about the reasonableness of the pace of the designation process. The D.C. Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.*, which governs actions by District of Columbia agencies, generally parallels the federal Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*, and apparently would apply to actions taken by the Review Board, *see A & G Limited Partnership v. Joint Committee on Landmarks, supra,* 449 A.2d at 293. Our Court of Appeals has recently announced the specific criteria which, under federal law, will govern judicial intervention where an agency has unreasonably delayed a decision to the detriment of person or property. *See Telecommunications Research and Action Center v. FCC, supra.* Under such standards, plaintiffs here might well be able to obtain an order declaring that the Review Board's handling of the interior landmark application has been "unreasonably delayed" as a matter of administrative law, *compare* 5 U.S.C. § 706(1), *with* D.C.Code § 1–1510(a)(2), and requiring the Review Board to reach a final decision promptly. *Cf.*

*Telecommunications Research and Action Center, supra.* However, the plaintiffs have conspicuously failed to address these criteria here or ask for judicial relief tailored to the delay.[14] Plaintiffs are therefore not entitled to such relief under this Court's jurisdiction. Today's disposition of the matter does not, on the other hand, preclude or prejudice plaintiffs' access to the courts of the District of Columbia for relief under the D.C. Administrative Procedure Act, applying principles announced in *Telecommunications.*

Should the plaintiffs file a permit application with respect to the interior, and should the Review Board subsequently grant the pending landmark application with respect to the interior or delay action by more than ninety days, plaintiffs would then be free to seek judicial intervention (as well as review before the Mayor). Until such time as the Review Board has passed on the pending interior landmark application—either at their own initiative or upon the plaintiffs' filing of a permit application—any further efforts by plaintiffs to challenge the application of the D.C. act to the interior of the Warner Building will be premature.

Meanwhile, as to those aspects of the complaint challenging the pending application to designate the interior of the Warner Theater as an historical landmark, plaintiffs' Motion for Summary Judgment should be denied and defendants' Cross-Motion for Summary Judgment should be granted.

\*     \*     \*

With respect to the entry of a final order on the pending motions, the parties should—on or before February 7, 1985—exchange and then submit for the Court's consideration proposed orders consistent with the rulings set out in this memorandum. In order to maintain the *status quo* until defendants and intervenor have an opportunity to determine their future

---

**14.** Plaintiffs may be reluctant to press for a decision by the Review Board because of concern as to the result.

course of action, in light of the public interest in this matter, and after balancing the relative harm to the parties from maintenance of the *status quo,* each party's proposed order shall provide for a stay of its effective date for a period during which any of the parties may appeal the Order or take any appropriate administrative action with reference to this matter. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C.Cir.1977). Pending filing of the proposed orders and entry of a final Order by the Court, the parties shall maintain the *status quo,* particularly with respect to any alteration or demolition of the Warner Building.

## FINAL ORDER OF JUDGMENT

Pursuant to the Memorandum and Order of January 30, 1985, the parties have submitted proposed orders on their summary judgment motions. In consideration of those proposed orders, the cross-motions for summary judgment, the pleadings, and the entire record herein, and for the reasons set forth in the Memorandum of January 30, 1985, it is this 7th day of March, 1985, hereby

ORDERED, ADJUDGED, and DECREED: that plaintiffs' motion for summary judgment as to Count VIII of the amended complaint, insofar as it extends to the exterior of the Warner Building, is GRANTED; and it is further

ORDERED, ADJUDGED, and DECLARED: that the May 18, 1983 decision of the Joint Committee on Landmarks of the National Capital ("Joint Committee") designating the exterior of the Warner Building as a "landmark" under the District of Columbia Historic Landmark and Historic District Preservation Act, D.C. Code 1981, §§ 5–1001 *et seq.* (1981 & 1984 Cum.Supp.) ("D.C. Preservation Act") was UNTIMELY and UNLAWFUL because the decision was delayed beyond the 90-day period established by D.C.Code 1981, § 5–1002(6)(B). Unless and until another landmark application with respect to the exterior of the Warner Building is filed, any

future applications for permits to alter or demolish the exterior of the Warner Building shall be filed with, considered by, and acted upon by the District of Columbia Department of Licenses, Investigations, and Inspections ("Department of Licenses") without any referral to the District of Columbia Historic Preservation Review Board ("Review Board") or the Office of the Mayor for consideration of the "public interest" or of any "unreasonable economic hardship" pursuant to D.C.Code §§ 5–1004(e) and 5–1005(f). This ruling does not preclude further appropriate action by the Review Board pursuant to the D.C. Preservation Act on any subsequent or renewed landmark application with respect to the exterior of the Warner Building. Nor does this ruling determine the validity or invalidity of any further landmark application or designation, or its effect upon some future permit application, with respect to the exterior of the Warner Building. And it is further

ORDERED, ADJUDGED, and DECREED: that the remainder of plaintiffs' amended complaint, to the extent that it seeks relief with respect to the exterior of the Warner Building, is dismissed as MOOT; and it is further

ORDERED, ADJUDGED, and DECREED: that plaintiffs' motion for summary judgment as to Count VIII of the amended complaint, insofar as it extends to the interior of the Warner Building, is DENIED; and it is further

ORDERED, ADJUDGED, and DECREED: that plaintiffs' motion for summary judgment as to Counts III, IV, and V of the amended complaint, to the extent that they extend to the interim designation of the interior of the Warner Building, is DENIED; and it is further

ORDERED, ADJUDGED, and DECREED: that defendants' cross-motion for summary judgment as to Counts III, IV, and V of the amended complaint, to the extent that they extend to the interim designation of the interior of the Warner Building, is GRANTED; and it is further

ORDERED, ADJUDGED, and DE-CLARED: that the grant of summary judgment in favor of defendants on Counts III, IV, and V is not intended to preclude any remedies that might be available against any action or inaction by the Joint Committee or the Review Board under the D.C. Administrative Procedure Act, D.C. Code §§ 1–1501 *et seq., see* Memorandum of January 30, 1985, at 13 n. 10, 18–19; and it is further

ORDERED, ADJUDGED, and DE-CREED: that to the extent that the amended complaint seeks a ruling as to any final landmark designation by the Review Board with respect to the interior of the Warner Building, it is hereby DISMISSED as premature; and it is further

ORDERED, ADJUDGED, and DE-CREED: that, it appearing on the undisputed material facts adduced by the parties that plaintiffs are not entitled to any further relief on the merits as to any remaining aspect of the amended complaint, this action should be, and is hereby, DISMISSED; and it is further

ORDERED: that the effect of this Order is hereby STAYED for a period of 30 days during which any of the parties may appeal this Order or take any appropriate administrative action with reference to this matter; and it is further

ORDERED: that, in light of the public interest and after balancing the relative harm to the parties from the maintenance of the *status quo*, the plaintiffs shall maintain the *status quo* with respect to any alteration or demolition of the Warner Building until such time as the stay herein expires or is modified by further order.

### ORDER

On March 4, 1985, plaintiffs filed a motion to reconsider and modify the Memorandum of January 30, 1985, on the grounds that, allegedly, plaintiffs recently learned that an application for a permit to install a fire alarm system in the interior theater portion of the Warner Building was filed by the lessee of the theater portion on November 8, 1985. The lessee is not a plaintiff in this action. *See* Memorandum of January 30, 1985 at 14. *Compare id.* at 396–397 & nn. 9–10. Accordingly, it is this 7th day of March, 1985, hereby

ORDERED: that plaintiffs' Motion to Reconsider and Modify Opinion on Summary Judgment in Light of Newly Discovered Evidence should be, and is hereby, DENIED.