MICHAEL H. JASPER & others *vs.* MICHAEL A. DOLAN, INC. & others.

Worcester.    October 10, 1968. — December 4, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Alcoholic Liquors*, License, Transfer of location, Nuisance.   *Zoning*, Nonconforming use or structure, Alcoholic liquors.   *Nuisance.   Equity Pleading and Practice*, Nuisance.

In a suit in equity under G. L. c. 139, § 16A, to enjoin allegedly illegal sale of alcoholic beverages at certain premises as a nuisance, the court may determine whether a license for such premises has been lawfully issued or transferred.   [18]

In G. L. c. 138, § 16C, the provision that the prohibition against licensing for the sale of alcoholic beverages of premises located within five hundred feet of a church or school "shall not apply to the transfer of a license from premises located within the said distance to other premises located therein, if it is transferred to a location not less remote from the nearest church or school than its former location," means only that a licensee having a location in the five hundred feet area around a particular church or school may transfer to a new location in the same area not nearer to that church or school than his former location, and does not mean that he may transfer to a location within five hundred feet of another church or school.   [19–20]

Under the provision of G. L. c. 138, § 16C, as amended through St. 1965, c. 629, § 1, that "Premises . . . located within . . . five hundred feet of a church . . . shall not be licensed for the sale of alcoholic beverages," and the saving clause contained in § 2 of St. 1965, c. 629, that such provision "shall not apply to premises which, prior to . . . the establishment of a church . . . within . . . five hundred feet thereof, were licensed for the sale of alcoholic beverages," it was held that the transfer of an all alcoholic package store license from certain premises to premises which, prior to the establishment of a church within five hundred feet thereof, had a beer and wine package store license, was not prohibited by G. L. c. 138, § 16C, since the saving clause was intended to save premises for all types of liquor licenses rather than merely to save particular preëxisting licenses.   [21]

Where it appeared that premises in a city had been used for a food market and sale of beer and wine under a package store license before the adoption of a zoning ordinance placed them in a residence district, and that after the adoption of the ordinance an all alcoholic package store license

was transferred to the premises and an area with a separate entrance in which all alcoholic beverages were sold was set off by partitioning, it was held that the sale of all alcoholic beverages was not entitled to the protection afforded to preëxisting nonconforming uses by G. L. c. 40A, § 5, and the ordinance, and was illegal. [24]

Selling liquor at certain premises in a city in violation of the city's zoning ordinance and so illegally constituted a common nuisance which should be enjoined in a suit in equity under G. L. c. 139, § 16A. [24–25]

BILL IN EQUITY filed in the Superior Court on December 19, 1966.

The suit was heard by *Meagher,* J.

*Matthew R. McCann* for the plaintiffs.

*Christy A. Pano* for the defendants.

SPALDING, J.  By this bill in equity brought under G. L. c. 139, § 16A, the plaintiffs (fourteen voters of the city of Worcester) seek to enjoin the defendants from selling all-alcoholic beverages in a package store at 158 Belmont Street in that city, and to set aside the license that had been granted for those premises.  The bill alleged that the license was invalid because (1) the premises were within 500 feet of a church in violation of G. L. c. 138, § 16C, and (2) the exercise of the license on the premises would be illegal under the zoning laws.  From a decree dismissing the bill, the plaintiffs appealed.  The evidence is reported and the judge made brief findings of fact.  Facts found by the judge and by us will be stated hereinafter as occasion may require.  *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178.

1.  The plaintiffs, who were "not less than ten legal voters" of the city of Worcester, could invoke the provisions of G. L. c. 139, § 16A, to abate, as a common nuisance, the alleged illegal sale of liquor at 158 Belmont Street.  And in deciding that issue the court may determine whether a license has been lawfully issued or transferred.  *Cleary* v. *Cardullo's, Inc.* 347 Mass. 337, 351.  *First Church of Christ, Scientist, in Boston, Mass.* v. *Alcoholic Beverages Control Commn.* 349 Mass. 273, 275, fn. 1.

2.  In 1966 one of the defendants, Vessio's Market, Inc. (Market) was the holder of a beer and wine package store license for the first floor of a building at 158 Belmont Street.

The license was first issued in 1953 and was annually re-
newed thereafter; it was exercised in conjunction with a
self-service food market which the Market conducted on the
first floor. These premises were rented to the Market by
two other defendants, George and Constance Vessio.

The Vessios were the sole stockholders of Michael A.
Dolan, Inc., also a defendant, which owned an all-alcoholic
package store license for 30A Ward Street, Worcester.
About August 5, 1966, the Dolan corporation applied to the
Worcester licensing board for leave to transfer its license
from 30A Ward Street to 158 Belmont Street. The local
board and the Alcoholic Beverages Control Commission both
approved the application and in November, 1966, the beer
and wine license for 158 Belmont Street was recalled and the
all-alcoholic license was transferred from Ward Street to the
Belmont Street premises.

At the time of the transfer, G. L. c. 138, § 16C (as amended
through St. 1965, c. 629, § 1), read in part as follows:
"Premises, except those of an inn-holder, located within a
radius of five hundred feet of a church or school shall not
be licensed for the sale of alcoholic beverages; but this pro-
vision shall not apply to the transfer of a license from
premises located within the said distance to other premises
located therein, if it is transferred to a location not less re-
mote from the nearest church or school than its former
location."[1]

The plaintiffs contend that the transfer should not have
been permitted, since the Belmont Street premises were
within 500 feet of the Calvary Temple, which the judge
found had been regularly used as a church since 1964. Al-
though the premises at Ward Street were even closer to
another church, the defendants properly do not argue that
the transfer was valid under § 16C as a transfer "from
premises located within the said distance to other premises
located therein, if it is transferred to a location not less
remote from the nearest church or school than its former

---

[1] See now St. 1968, c. 435, which amended the quoted portions of § 16C in
certain respects not here relevant.

location." That phrase has been construed to mean that the right of a licensee to move within 500 feet of a church or school "is limited to the particular church or school area in which lay his licensed premises prior to the move." *Cleary v. Cardullo's, Inc.* 347 Mass. 337, 345.

The defendants rely on the saving clause contained in § 2 of St. 1965, c. 629. This reads: "The provisions of section sixteen C of chapter one hundred and thirty-eight of the General Laws, as amended by section one of this act, shall not apply to premises which, prior to the effective date of this act, or prior to the establishment of a church or school within a radius of five hundred feet thereof, were licensed for the sale of alcoholic beverages." The defendants contend that § 16C's prohibition against the granting of a license within 500 feet of a church does not apply since the Belmont Street premises were licensed before the Calvary Temple was established in 1964.

The plaintiffs concede that the saving clause would have permitted the continuance of the beer and wine license, since this had existed at the Belmont Street premises since 1953. But they contend that it was not designed to permit a new type of license such as an all-alcoholic license. Otherwise, it is argued, a preëxisting beer and wine package license could be used to justify the issuance of even a tavern or hotel license.

The question, then, is whether the saving clause was intended to save the *premises* for all types of liquor licenses or only to save particular preëxisting *licenses*. A somewhat similar question was discussed but not decided in *Vaughan v. Max's Mkt. Inc.* 343 Mass. 394, 396–397. The saving clause states that § 16C "shall not apply to *premises* which . . . were licensed for the sale of alcoholic beverages" (emphasis supplied). And there is nothing in the legislative history which would indicate that the Legislature meant to refer only to existing licenses. Indeed, the legislative history indicates the contrary. Section 16C was first enacted in 1954. Originally Senate Bill No. 148 provided that licensing authorities "may renew a previously granted license for

such premises which is in effect upon February first, nineteen hundred and fifty-four." It will be noted that this bill referred to the preserving of licenses. However, the bill as it was eventually passed (1954 Senate Bill No. 707) contained a saving clause which referred to premises rather than to licenses. Since this saving clause is essentially the same as the 1965 clause, the legislative history does not support the interpretation urged by the plaintiffs.

The 1965 saving clause does not distinguish between premises with different kinds of licenses; rather it applies to all premises "licensed for the sale of alcoholic beverages." The term "alcoholic beverages" is defined in G. L. c. 138, § 1, as "any liquid intended for human consumption as a beverage and containing one half of one per cent or more of alcohol by volume at sixty degrees Fahrenheit." Since the Belmont Street premises were licensed to sell beer and wine, which are "alcoholic beverages," the saving clause applies. Therefore, § 16C did not prohibit the transfer of the license to within 500 feet of the Calvary Temple.

3. The plaintiffs further contend that the transfer violated Worcester's zoning ordinance. The Belmont Street premises were located in a residential zone. Section 8 of the ordinance, however, provides that the ordinance was not to affect prior lawful use of a building if the use existed before the ordinance became effective in 1963. Thus, the nonconforming use with respect to the sale of food, beer and wine at the Belmont Street premises was unaffected by the zoning ordinance.

When the Vessios, through the Dolan corporation, applied for the transfer of its liquor license to Belmont Street, they agreed to make certain changes if the transfer was allowed. After the transfer was approved, the Vessios proceeded to carry out these changes. They partitioned the market with an area of fifteen feet by twenty-five feet at the front of the store set off for the sale of all alcoholic beverages. The market and the liquor store had separate entrances. There was a door leading from one store to the other but only employees could use it. George Vessio was the only

employee who worked in both stores. Since no permit was obtained from the board of appeals for the construction of the partition or for the use of the premises to sell all types of alcoholic beverages, these changes were illegal if they were not permitted by the provisions of the zoning ordinance dealing with nonconforming uses, change of use, alterations and the like. Moreover, if the ordinance was not complied with the liquor license should not have been issued, for G. L. c. 40A, § 12, requires all State, county and municipal officers to "refuse any permit or license for a new use of a building, structure or land which use would be in violation of any zoning ordinance."

Section 8 (c) (1) (ii) of the zoning ordinance states that it applies "to any change of use of any building, structure or land use, to any alteration of a building or structure when the same would amount to a reconstruction, extension, or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent. (See M. G. L. Ch. 40A, s. 5)." The statute referred to provides that no ordinance can affect a prior existing use but that it shall apply to the precise changes that are set out in § 8 (c) (1) (ii).[2] In other words, G. L. c. 40A, § 5, limits the scope of the zoning regulations a city may pass in relation to existing uses. Since the statute and § 8 (c) (1) (ii) use essentially identical language in relation to which changes are covered, the limitations imposed by the ordinance certainly do not exceed those allowed by the statute. If the changes were impermissible under the ordinance, then § 5 does not make them permissible.

[2] General Laws c. 40A, § 5, reads in part: "Except as provided in section eleven, a zoning ordinance or by-law or any amendment thereof shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of the ordinance or by-law, but it shall apply *to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent*" (emphasis supplied). (The italicized words are almost identical to the quotation from the zoning ordinance.)

The change to an all-alcoholic license and the construction of the partition were invalid under § 8 if they constituted "any change of use" of the premises at Belmont Street, a "reconstruction, extension, or structural change," or an alteration of the building "for its use for the same purpose to a substantially greater extent." The major changes that occurred here were the partitioning of the store, the consequent separation of the liquor and food businesses, and the selling of hard liquor.[3] The plaintiffs argue that this was a change from the prior nonconforming use in which the beer and wine operation was not separated from the food business and beer and wine were the only alcoholic beverages sold. The trial judge, however, found that there was no change of use.

"Recent cases have emphasized three tests for determining whether current use of property fits within the exemption granted to nonconforming uses. (1) Whether the use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect. . . . (2) Whether there is a difference in the quality or character, as well as the degree, of use. . . . (3) Whether the current use is 'different in kind in its effect on the neighborhood.'" *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23.

In *Marblehead* v. *Rosenthal*, 316 Mass. 124, we said at page 128, "A mere increase in the amount of business done, even a great increase, would not work a change in use." Thus in the case at bar the fact, without more, that there might be an increase in the amount of alcoholic beverages sold would not be a new use. "The distinction is between an increase in the amount of business, even a great increase, which does not work a change in use, and an enlargement of a nonconforming business so as to be different in kind in its effect on the neighborhood." *Medford* v. *Marinucci Bros. & Co. Inc.* 344 Mass. 50, 60. Presumably there was an increase in the amount of alcoholic beverages sold at the

---

[3] There is no evidence as to how much of an increase in the sale of alcoholic beverages at 158 Belmont Street resulted from the transfer of the all-alcoholic license; nor is there any evidence as to the effect, if any, on the neighborhood.

Belmont Street premises, but there was no evidence to show that there was such an enlargement of the nonconforming use as to be different in kind in its effect on the neighborhood.

The present case involves the addition of a product (hard liquor) sold by a store previously licensed to sell only beer and wine. We are of opinion that this addition does not satisfy the first and second tests laid down in *Bridgewater* v. *Chuckran, supra*. In other words, the sale of hard liquor (1) does not reflect the nature and purpose of the preëxisting nonconforming use and (2) differs in the quality or character, as well as the degree, from the prior use. This conclusion finds support in a decision (*Salerni* v. *Scheuy,* 140 Conn. 566) by the Supreme Court of Errors of Connecticut in a somewhat analogous situation. There a restaurant holding a beer license pursuant to a nonconforming use sought a license for the sale of all-alcoholic beverages and the application was denied on the ground that this use was not permitted under the zoning laws. The question before the court on appeal was whether this was a mere continuation of a nonconforming use or was an extension or enlargement of the use to such an extent as to constitute a prohibited use under the zoning laws. Recognizing that a mere increase in the amount of business does not constitute a change of use and that there must be a change in the character of the use to bring it within the prohibition of the zoning laws, the court, nevertheless, was of opinion that the proposed change from beer to all-alcoholic beverages "would be an extension and enlargement of . . . [the] existing nonconforming use . . . and would create a use . . . prohibited by the zoning ordinance." P. 572. Similarly, the operation of a separately conducted all-alcoholic package store is substantially different from the sale of beer and wine in connection with a food store. Accordingly we hold that the sale of all-alcoholic beverages at the Belmont Street premises constitutes a new use and is in violation of the zoning ordinance.

The final decree is reversed and a new decree is to be entered adjudging that the sale of all-alcoholic beverages at

the premises at 158 Belmont Street is illegal and constitutes a common nuisance, and enjoining the defendants from conducting or maintaining it.  G. L. c. 139, § 16A.  The plaintiffs are to have costs of appeal.

*So ordered.*