818 So.2d 595 (2002)
JPM INVESTMENT GROUP, INC., Appellant,
v.
BREVARD COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.
Nos. 5D01-1536, 5D01-1869.
District Court of Appeal of Florida, Fifth District.
May 3, 2002.
Rehearing Denied June 13, 2002.
*596 Richard E. Torpy of Amundsen, Moore, Torpy, Melbourne, for Appellant.
Scott L. Knox, Office of the County Attorney, Viera, for Appellee.
PETERSON, J.
JPM Investments Group, Inc. d/b/a Runway Sports Restaurant & Cabaret (JPM) appeals a declaratory judgment and the dismissal of a petition for certiorari. These appeals can be summarized as a two-pronged attack on the two trial courts' approvals of the Brevard County Board of County Commissioners' interpretation of county zoning ordinances. The interpretation resulted in the inability of JPM to gain approval from the State of Florida to serve all varieties of alcoholic beverages under a state 4COP license at JPM's long-standing place of business.
JPM serves beer and wine under a state 2COP license in an unincorporated area of Brevard County that abuts lands used for residential purposes. JPM or its predecessors in title to the lands on which it operates has been selling beer and wine for a period dating back to the time when Brevard County had no zoning ordinances. In 1958, the county adopted zoning ordinances and JPM's operation on its land became a non-conforming use, that is, a use that was outlawed under the adopted zoning ordinance, but was allowed to continue because the use predated the ordinance.
The Brevard County zoning ordinance defines a non-conforming use as:
Sec. 62-1181. Definition.
For the purposes of this subdivision, the term "nonconforming use" is defined as the use of land or structure that was lawful prior to the effective date of the ordinance from which this article is derived or the county comprehensive plan, or the effective date of any amendments thereto, but is not now permitted within the applicable zoning classification or is not permitted under any provisions of this article or the county comprehensive plan or any amendment thereto. In order for a use of land or structures to be included within such definition, such use must have been permanent and continuous prior to the effective date of the ordinance from which this article is derived or the effective date of any amendment to this article. The casual, intermittent, temporary or illegal use of land or structures prior to the effective date of the ordinance from which this article is derived or the effective date of any amendment to this article shall not be sufficient to qualify such use for the privileges of this subdivision.
*597 Section 62-1182 of the Brevard County Code allows the continuation of a nonconforming use with certain limitations:
Sec. 62-1182. Continuation generally; enlargement, expansion or modification.
(a) The use of land or structures qualifying as a nonconforming use as defined in the subdivision shall not be:
(1) Enlarged, extended, increased or expanded to occupy a greater area of land than was occupied upon the effective date of the ordinance from which this article was derived or the effective date of any amendment to this article, whichever date rendered such use nonconforming. However, any conforming structure on a substandard lot may be expanded to occupy a greater land area provided such expansion complies with all setback requirements and provided such expansion is not for living area.
* * *
(b) In addition to the provisions of subsection (a) of this section, structures qualifying as a nonconforming use as defined in this subdivision shall not be:
* * *
(2) Enlarged, extended, increased or expanded in any manner unless such enlargement, extension, increase or expansion is specifically in conformity with the provisions of this article and does not increase the nonconformity of such use. Nothing contained in this subsection shall be construed to prohibit the ordinary repair and maintenance of nonconforming structures provided such repair does not increase the cubic content of the structures; result in the enlargement, extension, increase or expansion of the nonconforming use; or result in a cost of repair and maintenance in excess of 50 percent of the fair market value of the structures.
In the year 2000, JPM applied to the State of Florida for a 4COP liquor license that would allow it to serve all types of alcoholic beverages rather than being limited by its existing 2COP liquor license to the serving of beer and wine. One of the requirements of the application was gaining the signature of a Brevard County official indicating that the location where JPM would be exercising its rights under the license was appropriately zoned. Brevard County's planning and zoning official refused to approve the license application reasoning that the sale of all types of alcoholic beverages would be an expansion prohibited by section 62-1182 because: 1) The State of Florida has different licenses for beer and wine (2COP) versus full liquor (4COP); 2) The Brevard County Commissioners have different regulations applicable to beer and wine versus full liquor; and 3) The County Commissioners have on two occasions denied conditional use permit applications filed for the purpose of adding full liquor consumption on-site to the previously allowed consumption of beer and wine.
JPM appealed to the Board of County Commissioners who affirmed the official's action and adopted his reasoning. JPM initiated the two actions in the circuit court, lost and appeals to this court.
JPM urges that a plain reading of section 62.1182 prohibits only an expansion or enlargement of a use if it is going to impact a greater area of land, that is, the section only prohibits a use that would make a physically larger footprint on the *598 land area. Brevard County contends that the ordinance applies if the use is increased regardless of whether a physically larger footprint results. In summary, JPM argues that it is the physical structures that must be examined while the County argues that it is the activity conducted on the premises that must be examined.
We agree with the County that the ordinance should be read by adding the disjunctive "or" resulting in the following: "[T]he use of land or structures qualifying as a nonconforming use ... shall not be ... [e]nlarged [or], extended [or], increased or expanded to occupy a greater area of land than was occupied upon the effective date of the ordinance...." Under this interpretation, only an "expansion" of the nonconforming use contemplates a physical impact to the land occupied by the structure housing the use. In contrast, the remaining three alternative circumstances identified in section 62-1182(a)(1)enlargement, extension or increaserelate back solely to the nonconforming "use" itself. We also agree with the County that if section 62-1182(a)(1) were read as applying to structures, as opposed to uses, section 62-1182(b) would be redundant because both sections would then prohibit enlargements, extensions, increases or expansion of structures qualifying as nonconforming uses. E.g., City of Opa Locka v. State ex. rel. Tepper, 257 So.2d 100 (Fla. 3d DCA 1972)(provisions of municipal ordinance must be considered as a whole, and be construed so as to be reasonable and consistent with one another, and construction which would defeat legislative purpose should not be supplied). This construction of the ordinance complies with the legislative purpose which is to prohibit the enlargement, extension, increase or expansion of nonconforming structures and uses. Zoning regulations, in providing for nonconforming structures and uses, look forward to the eventual elimination of all nonconforming structures and uses as speedily as is consistent with proper safeguards for the rights of those persons affected. See generally 12A Fla. Jur.2d, Counties and Municipal Corporations § 203; see also Salerni v. Scheuy, 140 Conn. 566, 102 A.2d 528, 530 (1954)("It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit.")
Further support for this interpretation can be found by reviewing section 62-1181, the definition provision, in conjunction with section 62-1182, the operative section. Clearly the former definition section contemplated that both activities and structure on the zoned land could constitute a non-conforming use. Unless section 62-1182 was intended to apply to both activities conducted on land and also to nonconforming structures, nothing in the code would have outlawed the activities.
Having determined that the Brevard County Code does prohibit the expansion of an activity on a parcel of land constituting a non-conforming use, we now turn to the issue of whether the serving of all alcoholic beverages is an enlargement, extension or increase of the prior use of JPM's activity of selling only beer and wine.
JPM argues that this court should not make a determination that the serving of "hard liquor" on its premises constitutes an increase in a non-conforming use without any record evidence. We disagree for the reason that the Brevard County ordinances and the State of Florida laws have already made that distinction. We find additional support from other jurisdictions *599 which have found that a change in activity from the serving of beer and wine to all alcoholic beverages is an expansion of a "use" as a matter of law.
The Brevard County Code broadly defines alcoholic beverages as "any beer, wine, liquor or other beverage meeting the definition of alcoholic beverages set out in Fla. Stat. § 561.01(4)." § 6.1. Also, code § 6-3 which regulates the hours of sale distinguishes between "beer", "wine" and "liquor." More restrictive hours are placed on establishments serving all alcoholic beverages as distinguished from establishments selling only beer and wine.
The State of Florida distinguishes between the sale of "liquor" as distinguished from "beer" and "wine" in its statutory scheme of regulation. See Fla. Stat. ch. 561-565. The requirements for liquor licenses are more onerous than those applicable to the other forms of alcoholic beverages.
In Jasper v. Dolan, 355 Mass. 17, 242 N.E.2d 540 (1968), the court specifically addressed the issue of the addition of a product (hard liquor) sold by a package store previously licensed to sell only beer and wine and found that the additional sale of hard liquor did not reflect the nature and purpose of the pre-existing non-conforming use and differed in the quality or character, as well as the degree, from the prior use. The court cited Salerni v. Scheuy, 140 Conn. 566, 102 A.2d 528 (1954) in support of its decision and enjoined the store from expanding its product line.
The facts of Salerni are strikingly similar to those of the instant case. The activity involved was a restaurant or tavern that operated for many years and sold only beer and wine. Zoning law changes eventually prohibited both the restaurant and sale of alcoholic beverages and the activity became a non-conforming use. Salerni applied to the city for a "full" liquor permit and the city clerk denied the application with the cryptic notation, "Beer only at this location." The Salerni opinion agreed with the action of the clerk stating:
The difference between the sale of beer only in a restaurant and the sale of all liquors therein is so great that our law requires a different permit from the liquor control commission for each of the two kinds of business. The fee charged for a permit to sell all kinds of liquor in a restaurant is much larger than for a permit to sell beer only. The reason for this must be either that the legislature believed that a restaurant selling all liquors would ordinarily do a different kind of business or that it was contemplated that it would cost more to police it.
The judgments in both cases on appeal are affirmed.
AFFIRMED.
GRIFFIN and PLEUS, JJ., concur.