NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-292                                              Appeals Court

JILLIAN ALMEIDA & others[1]  vs.  ANTONIO ARRUDA & others.[2]

No. 15-P-292.

Bristol.     January 12, 2016. - March 18, 2016.

Present:  Kafker, C.J., Cohen, & Blake, JJ.

Alcoholic Liquors.  Zoning, Nonconforming use or structure.

Civil action commenced in the Superior Court Department on October 18, 2011.

The case was heard by Robert J. Kane, J.

Marc R. Deshaies for the plaintiffs.
Walter Fraze, Jr., for Antonio Arruda and another.

KAFKER, C.J.  This appeal arises from a dispute over the addition of beer and wine sales at a convenience store in the town of Westport.  The store, owned by Antonio and Darlene

_____

[1] Keith Almeida, Kathryn E. Carreiro, Louis Carreiro, Kevin Danis, Lori Danis, Kathleen M. Goncalves, Manuel Goncalves, Jane Owen, Allen W. Rencurrel, Lori E. Rencurrel, and Susan L. Strauss.

[2] Darlene Arruda and the zoning board of appeals of Westport.  The latter did not file a brief or otherwise participate in this appeal.

Arruda (collectively, Arrudas) and located on land that is currently zoned as residential, operates as a lawful, preexisting nonconforming use pursuant to G. L. c. 40A, § 6. The Arrudas sought a finding by the zoning board of appeals of Westport (board) allowing the sale of beer and wine at the store. The board voted unanimously in favor of the Arrudas on the ground that the addition of beer and wine sales to the store's preexisting nonconforming use is not substantially more detrimental to the neighborhood. The plaintiffs, abutters to the store, appealed pursuant to G. L. c. 40A, § 17. After a bench trial, a Superior Court judge affirmed the board's decision, finding that the sale of beer and wine was neither a "substantial change" in use nor a "detriment to the neighborhood." Judgment entered and the plaintiffs appealed. We affirm.

Background. The convenience store is located on land that is currently zoned for residential use. The Arrudas purchased the store in 2005, at which time it presumably was operating as a lawful nonconforming use under G. L. c. 40A, § 6.[3] The store was within commonly owned commercial space that also contained a beauty shop and an insurance company. In 2006, the Arrudas

_____

[3] The record does not indicate at what point in time the land was rezoned, presumably from commercial or mixed use to residential. Because neither party argues to the contrary, we assume that the land's commercial use was permissible prior to the adoption of its current zoning classification.

sought permission from the board to enlarge the convenience store by encapsulating the space then reserved for the beauty shop and the insurance company. The Arrudas also sought permission to sell beer and wine at the store. After a public hearing, the board granted permission for the store's expansion but denied permission to sell beer and wine. Apparently no one appealed the board's decision.

In September, 2011, the Arrudas leased the store to Lino Rego while maintaining ownership of the property. The Arrudas again petitioned the board to allow the sale of beer and wine at the store. After a public hearing, the board voted in favor of the Arrudas, finding that "the addition of beer and wine sales to the pre-existing non-conforming . . . use list for this property is not substantially more detrimental to the neighborhood."

Pursuant to G. L. c. 40A, § 17, the plaintiffs filed a complaint in Superior Court seeking to reverse the board's decision. The judge determined that "the proposed sale of beer and wine fails to constitute a substantial change in use, and fails to constitute a detriment to the neighborhood." In finding no substantial change in use, the judge noted that the sale of beer and wine would not predominate but instead would "integrate into the current operations of the store," occur in the same space in which other groceries were sold, and occupy

only about twelve percent of the store's space.  In finding no detriment to the neighborhood, the judge noted that traffic concerns were related more to the general use and nature of the road on which the store is located than to any proposed change in the store's operation, that Rego's background in running a similar store would minimize the risks associated with alcohol sales, and that any littering would not be increased by the sale of beer and wine.

Discussion.  A prior nonconforming use is one that is lawfully carried on at the time a zoning ordinance or by-law is adopted that prohibits that use.  Mendes v. Board of Appeals of Barnstable, 28 Mass. App. Ct. 527, 529 (1990).  The convenience store here was in operation before the land was zoned for residential use and, therefore, is a prior nonconforming use.  See G. L. c. 40A, § 6.

Prior nonconforming uses, and any proposed changes, extensions, or alterations, are governed by G. L. c. 40A, § 6.[4]

---

[4] General Laws c. 40A, § 6, inserted by St. 1975, c. 808, § 3, provides, in relevant part:  "Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun . . . before the first publication of notice of the public hearing on such ordinance or by-law . . . but shall apply to any change or substantial extension of such use. . . .  Pre-existing nonconforming structures or uses may be extended or altered, provided . . . that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration

Pursuant to this statute, a prior nonconforming use of land is not subject to a later enacted ordinance or by-law. However, "any change or substantial extension of such use" falls outside this protection and is therefore subject to later amendments to an ordinance or by-law. Ibid. The question is whether the proposed use is a change or substantial extension under § 6. If the answer is "no," then the proposed use is permitted as a protected prior nonconforming use. Moreover, under art. 4.1.2 of the Westport zoning by-laws, even if the answer is "yes," then the proposed use may be permitted if the board makes an additional finding that "such change shall not be substantially more detrimental than the existing non-conforming use to the neighborhood."[5]

---

shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

[5] General Laws c. 40A, § 6, "prescribes the minimum of tolerance that must be accorded to nonconforming uses." Nichols v. Board of Zoning Appeal of Cambridge, 26 Mass. App. Ct. 631, 633 (1988), quoting from Inspector of Bldgs. of Burlington v. Murphy, 320 Mass. 207, 209 (1946). However, municipalities maintain the right to regulate or even to forbid changes in nonconforming uses through zoning by-laws. Blasco v. Board of Appeals of Winchendon, 31 Mass. App. Ct. 32, 39 (1991). Westport's by-laws, consistent with c. 40A, § 6, allow changes pursuant to art. 4.1.2, which states, "A non-conforming use or structure may be changed provided there is a finding by the [board] that such change shall not be substantially more detrimental than the existing non-conforming use to the neighborhood." Article 4.2 states, "It is the intent and purpose of these By-Laws to conform with M.G.L. Chapter 40A and amendments thereto, and to the extent that any provisions hereof are in conflict with the provisions of said Chapter 40A, the

The three-prong test to determine whether a proposed use is a change or substantial extension and therefore subject to the prescribed finding requirement is as follows: (1) whether the proposed use reflects the nature and purpose of the prior use, (2) whether there is a difference in the quality or character, as well as the degree, of use, and (3) whether the proposed use is different in kind in its effect on the neighborhood. Powers v. Building Inspector of Barnstable, 363 Mass. 648, 653 (1973). See Bridgewater v. Chuckran, 351 Mass. 20, 23 (1966); Derby Ref. Co. v. Chelsea, 407 Mass. 703, 712 (1990). The burden is on the property owner to prove "the requisite similarity between the [proposed] use and the original nonconforming use" so as to have it protected as a prior nonconforming use. Cape Resort Hotels, Inc. v. Alcoholic Lic. Bd. of Falmouth, 385 Mass. 205, 212 (1982). The analysis and the result depend "almost entirely on the particular facts of [the] case." Powers, supra.

On appeal, we are bound by the trial judge's findings of fact, including all reasonable inferences, that are supported by the evidence. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005); T.W. Nickerson, Inc. v. Fleet Natl. Bank, 456 Mass. 562, 569 (2010). Such findings will only be set aside if clearly erroneous. Mass.R.Civ.P. 52(a), as

provisions of Chapter 40A shall supersede and control the subject matter thereof."

amended, 423 Mass. 1402 (1996). The judge's legal conclusions are reviewed de novo. Anastos v. Sable, 443 Mass. 146, 149 (2004). Here, the judge's findings of fact are supported by the record and support his conclusion that the proposed sale of beer and wine satisfies all three prongs of the test and therefore "fails to constitute a substantial change in use."[6]

1. Nature and purpose of prior use. Citing the Supreme Judicial Court decision in Jasper v. Michael A. Dolan, Inc., 355 Mass. 17 (1968), as controlling, the plaintiffs argue that the addition of beer and wine sales does not reflect the nature and purpose of the prior nonconforming use and therefore is not protected under G. L. c. 40A, § 6. In Jasper, supra at 24, the court held that the addition of hard liquor sales at a self-service food market previously licensed to sell beer and wine constituted a "new use" because it did not reflect the nature and purpose of the preexisting use.[7] However, Jasper involved more than just the addition of hard liquor; the change in use also included partitioning the building into two distinct

---

[6] We think the judge used the term "substantial change" to refer to any "change or substantial extension" that falls outside of the protections of G. L. c. 40A, § 6. See Barron Chevrolet, Inc. v. Danvers, 419 Mass. 404, 410 n.9 (1995) (trial judge's use of the term "substantiality threshold" presumed "to refer to the requirements for a change to a nonconforming use to be denied the protections of G. L. c. 40A, § 6").

[7] The court also held that it violated the second prong regarding quality and character as well as degree of use. Jasper, supra.

stores, a self-service food market and a liquor store, each with separate entrances.  See id. at 21.  See also Derby Ref. Co., supra at 713, quoting from Jasper, supra at 24 ("Our holding in Jasper rested principally on the consideration that 'the operation of a separately conducted all-alcoholic package store is substantially different from the sale of beer and wine in connection with a food store'" [emphasis supplied]).  We agree with the judge that Jasper is distinguishable from this case because here, the proposed sale of beer and wine "would occur in the same space as where other groceries and sundries are sold" and "[those sales] would integrate into the current operations of the store."

Here, the proposed use reflects the nature and the purpose of the prior use, thereby meeting the first prong of the test. The prior use consists of a neighborhood convenience store selling groceries and various sundries.  The proposed use is the same, just with the addition of beer and wine.  Our decisions do not require that a proposed use be indistinguishable from a prior use in order to be protected as a prior nonconforming use. Compare Powers, 363 Mass. at 659 (expanding retail sale of candles business to include various "gift shop" and other noncandle-related items did not change nature and purpose of retail sales business); Derby Ref. Co., 407 Mass. at 713 (converting petroleum storage facility to liquid asphalt storage

facility did not change nature and purpose of use, which remained bulk deliveries, bulk tank storage, and wholesale distribution). Contrast Cape Resort Hotels, Inc., 385 Mass. at 212-213 (shifting from traditional, full-service summer resort hotel to large entertainment complex constituted change in nature and purpose of prior use).[8]

2. Quality, character, and degree of use. There is also nothing to suggest that the proposed sale of beer and wine would change the quality and character, as well as the degree of use, of the convenience store. The second prong may be satisfied when a proposed use is "reasonably adapted to the prior use," is not "extraordinary or unreasonable," and does not "change the fundamental nature of the original enterprise." Barron Chevrolet, Inc. v. Danvers, 419 Mass. 404, 411 (1995). See Derby Ref. Co., supra at 714 (second prong satisfied when "nothing suggest[s] that . . . changes were either extraordinary or unreasonable or that they changed the fundamental nature of the original enterprise"). The judge determined that the beer and wine sales would not predominate but rather would "operate

_____

[8] The plaintiffs also argue that the proposed use does not meet the first prong because the "introduction of the sale of beer and wine at [the convenience store] does not reflect the nature and purpose of the Westport Zoning By-Law," which "is to prohibit retail sales in residentially zoned districts." This argument, however, is misguided as it does not state the correct test. The proposed use must reflect the nature and purpose of the prior use, not the nature and purpose of subsequently enacted by-laws. See, e.g., Derby Ref. Co., 407 Mass. at 712.

as an adjunct to the sale of groceries and sundries that the store presently sells."  This determination is supported by the judge's finding that of the store's twelve or thirteen beverage coolers, beer and wine would be placed in no more than five coolers.  Furthermore, these products would occupy no more than twelve percent of the store's space.  The additional products simply reflect a small, reasonable expansion in convenience store inventory.  Nothing in the record suggests that allocating twelve percent of a convenience store's space to allow for beer and wine sales is an extraordinary or unreasonable change, nor would doing so change the fundamental nature of the convenience store.  See Derby Ref. Co., supra; Barron Chevrolet, Inc., supra.  Contrast Cape Resort Hotels, Inc., 385 Mass. at 213 (transforming traditional full-service hotel with dining room, reading room, and lobby into entertainment complex with three "clubs" and game room "demonstrates a fundamental difference in 'the quality or character, as well as the degree, of use'"), quoting from Bridgewater, 351 Mass. at 23; Hinves v. Commissioner of Pub. Works of Fall River, 342 Mass. 54, 57 (1961) (transforming grocery store into catering service constitutes use different "in quality and not merely in degree" [citation omitted]).  Therefore, the second prong of the test is satisfied.

3.  <u>Different in kind in its effect on neighborhood</u>.  In support of their contention that the addition of beer and wine sales at the store is an impermissible expansion of the prior nonconforming use, the plaintiffs argue that these sales would be substantially more detrimental to the neighborhood. Specifically, the plaintiffs point to potential increases in traffic and litter, as well as safety concerns related to inebriated customers.  The judge's findings support the conclusion that the third prong of the test is satisfied.[9]

Although increased traffic is a legitimate consideration, see <u>Powers</u>, 363 Mass. at 663, the judge noted that the traffic concerns here "lie in the nature of the [road]" not the use of the store.  Use of this road has increased in connection to population growth in the surrounding area.  Furthermore, the topography of the road lends itself to speeding drivers.  These factors are present regardless of whether the convenience store sells beer and wine.  Similarly, any litter problems are likely to remain, notwithstanding the proposed use, because, as the

---

[9] Although the judge clearly found the third prong of the test satisfied, he used terminology referring to "detriment" that appears to blur the distinction between the third prong and the separate inquiry under the Westport by-laws allowing a change in use upon a finding that the change is not "substantially more detrimental than the existing non-conforming use to the neighborhood."  As his factual findings clearly satisfy the third prong, any confusion in terminology is immaterial.  Because here the proposed use is not a change under G. L. c. 40A, § 6, no finding as to substantial detriment to the neighborhood is necessary.

judge noted, it is illogical that "an individual who purchases beer and wine is going to dispose of the container while out in the parking lot."  The judge concluded that the record did not support a finding that inebriated individuals would come to the store and be permitted to purchase beer and wine.  We agree.[10] Therefore, the judge's findings support the determination that the sale of beer and wine would not affect the neighborhood in a way that is different in kind as compared to the current store. Contrast Marblehead v. Rosenthal, 316 Mass. 124, 127-128 (1944) (different effect on neighborhood when tailor shop with minimal hand-washing of garments transitioned into completely mechanized dry cleaning establishment); Powers, supra (converting storage building to wholesale shipping and receiving center resulted in increased truck traffic different in kind in its effect on neighborhood).

---

[10] The judge did err, however, in relying on evidence that Rego was a responsible operator with the necessary background and experience to guard against the sale of beer and wine to intoxicated customers.  The proper focus is on the particular use, not the particular owner or operator, which may change over time.  See CHR Gen., Inc. v. Newton, 387 Mass. 351, 356 (1982) ("A 'fundamental principle of zoning [is that] it deals basically with the use, without regard to the ownership, of the property involved or who may be the operator of the use'"), quoting from 1 Rathkopf, Zoning and Planning § 1.04, at 1-21 (4th ed. 1982).  See also Revere v. Rowe Contr. Co., 362 Mass. 884, 885 (1972) (statutory protections afforded to nonconforming use are "not personal to the particular owner or occupant," but instead relate to use itself).  The error, however, was immaterial.

Conclusion.  We conclude that the evidence supports the judge's determination that the sale of beer and wine satisfies the three-prong test.  Therefore, in the instant case, the proposed sale of beer and wine at the convenience store does not constitute a change in use and is thus protected as a prior nonconforming use under G. L. c. 40A, § 6.

Judgment affirmed.